EX PARTE: ERNEST AMOS.

En Banc.

Opinion Filed December 6, 1927.

1024

W. J. *Oven*, of Tallahassee, for Petitioner;

J. *McHenry Jones*, Special Assistant to the Attorney General, of Pensacola, for the State.

STRUM, J.—At a special term of the Circuit Court for Seminole County, the grand jury presented two indictments against the petitioner, Ernest Amos, purporting to charge petitioner with the common law offense of malpractice in office, such malpractice consisting of the alleged wilful and corrupt failure on the part of the petitioner as Comptroller of the State of Florida to perform several discretionary official duties. See *Ex parte* Amos, 112 South. Rep. 289; 29 Cyc. 1449; 1 Bishop Crim. Law (9 Ed.) Sec. 460. Each indictment contains two counts. Petitioner is held in custody by authority of a capias issued pursuant to each indictment, and seeks his release upon writ of *habeas corpus*, invoking the original jurisdiction of this Court. Two petitions were filed, one questioning the lawfulness of petitioner's custody under each capias. The two petitions, for purposes of consideration here, will be consolidated.

The material portions of the indictments in question are as follows:

1. That the petitioner, Ernest Amos, on the 20th day of May, 1926, as Comptroller of the State of Florida, did "knowingly, unlawfully, wilfully and corruptly fail and refuse to forfeit the rights, privileges and franchise of Seminole County Bank of Sanford, Florida, a banking corporation organized, existing and doing business in and

under the laws of the State of Florida * * * , the said banking corporation then and there having violated, and having then and there permitted certain of its officers to violate Section 4151 of the Revised General Statutes of Florida'' by then and there permitting a named individual to borrow from said bank, and by said banking corporation having loaned to the said individual, and to firms, corporations and co-partnerships in which the said individuals was directly and indirectly interested, ''an amount in excess of 40% of the capital stock and surplus of said banking corporation, he, the said Ernest Amos, then and there well knowing and having satisfactory evidence thereof * * * .''

2. That the petitioner as Comptroller of the State of Florida, on the 20th day of May, 1926, did ''knowingly, unlawfully, wilfully and corruptly fail and refuse to forfeit the rights, privileges and franchise'' of the bank mentioned in the previous count, ''the said banking corporation and the directors thereof having permitted the said banking corporation to violate, and the officers, directors and managers of said banking corporation having violated Section 4153 of the Revised General Statutes of Florida by then and there carrying in the assets of the said corporation $294,481.81 in amount and value of notes and obligations in its reports to the Comptroller and as published as required by law, which were past due and upon which no interest had been paid for one year, and which said notes and obligations were not carried to the reasonable value of collateral given therefor and which were not carried at the reasonable value fixed by the Board of Directors in such cases where the same was in course of collection by action at law; he, the said Ernest Amos, then and there well knowing and having satisfactory evidence thereof * * * .''

3. That the petitioner on the 20th day of May, 1926, as Comptroller of the State of Florida, "and being then and there charged with the duty in the event the legal reserve of any banking corporation in the State of Florida shall fall below the legal requirement of 20% of the aggregate amount of its deposits, of requiring said banking corporation to make good its legal reserve within thirty days after official notification thereof to said banking corporation, and upon failure so to do, to wind up the business of said banking corporation as provided by law, did then and there knowingly, unlawfully, wilfully and corruptly fail and refuse to wind up the business of" the bank above mentioned, "he, the said Ernest Amos, then and there well knowing that the legal reserve of said banking corporation had fallen below the legal requirements of 20%, and that the same then and there was about 17% of the agregate amount of its deposits * * * ."'·

4. That the petitioner on the 20th day of May, 1926, as Comptroller of Florida, "did then and there knowingly, unlawfully, wilfully and corruptly fail and refuse to wind up the business of, and declare to be forfeit the rights, privileges and franchises of" the banking corporation above mentioned, "he, the said Ernest Amos, being then and there as such officer charged with the duty so to do, the said banking corporation being then and there in an unsound condition, and then and there threatened with insolvency because of illegal and unsafe investments, he, the said Ernest Amos, then and there well knowing and having satisfactory evidence thereof * * * ."

In a criminal prosecution, it is essential to the jurisdiction of the Court that the charge against the accused state some criminal offense known to the law. Whether or not it appears from the face of the charge that the accused

has committed an act which the law makes criminal is a matter which may therefore be inquired into on *habeas corpus.* Infirmities in an indictment amounting to no more than imperfect, inexact or deficient pleading and which might render the indictment amenable to a motion to quash can not avail on *habeas corpus,* as such faults are not fatal to the jurisdiction of the court. Upon *habeas corpus,* the courts will consider whether the indictment contains sufficient allegations to show that petitioner has committed a criminal offense of which the court in which the indictment was presented has jurisdiction, or to state the matter conversely, whether the indictment merely attempts to charge as a criminal offense an act which the law does not declare to be criminal. If it appears from the face of the indictment that no criminality is attached by law to the act charged, detention thereunder may be relieved against as being without jurisdiction. Ex parte Prince, 27 Fla. 196, 9 South. Rep. 659; Ex parte Bailey, 39 Fla. 734, 23 South. Rep. 552; Ex parte Robinson, 73 Fla. 1068, 75 South. Rep. 604; Ex parte Amos, 112 South. Rep. 289, 12 R. C. L. 1190, 29 C. J. 34.

It will be observed that the delinquency in duty attempted to be charged in counts 1 and 2 consists of the alleged wilful and corrupt failure of the Comptroller "to forfeit the rights, privileges and franchise of said bank because of a violation by the said bank and its officers of Sections 4151 and 4153, Revised General Statutes, 1920," in the respects above set out, he, the said Comptroller, well knowing and having satisfactory evidence of such violations. The delinquency in duty attempted to be charged in counts 3 and 4, respectively, consists of the alleged wilful and corrupt failure and refusal of the Comptroller "to wind up the business," and "to wind up the business and declare to be forfeit the rights, privileges

and franchise'' of the bank in question on account of the existence of described conditions in the business affairs of said bank in violation, respectively, of the provisions of Sections 4140 and of Sections 4162 and 4167, Revised General Statutes, 1920, he, the said Comptroller, then and there well knowing of the existence of those conditions.

We will consider counts 1 and 2 together:

By Sec. 4162, Revised General Statutes, 1920, the rights, privileges and franchises of a bank or trust company doing business in this State under State laws ''shall be subject to be forfeited, and the State Comptroller may forthwith designate and appoint a receiver to take charge of the assets and affairs of said bank'' upon the Comptroller becoming satisfied, from reports furnished him by a State bank examiner, or upon other satisfactory evidence,'' of the existence of any of the several circumstances referred to in that statute. Amongst those circumstances are that such bank has become insolvent and is in default; or that such bank is in an unsound condition or threatened with insolvency because of illegal or unsafe investments; or that such bank has knowingly violated, or knowingly permitted any of its officers to violate, any of the provisions of law relative to such bank. See Bryan v. Bullock, 84 Fla. 179, 93 South. Rep. 182; Ex parte Amos, *supra.*

Though the Comptroller, under the circumstances just referred to, has the discretionary power to appoint a receiver, the wilful and corrupt failure or refusal to exercise which power in the circumstances named might constitute the common law offense of malpractice in office, still he has no power to ''forfeit the rights, privileges and franchises'' of the bank. A franchise is property within the meaning of the Constitution, and in respect of its enjoyment and protection it is regarded by the law precisely

as any other property. Although the franchise of a corporation may be subject to forfeiture because of an abuse or misuse of the rights and powers thereby granted, the general rule is that such forfeiture can not be effectuated by a mere administrative or ministerial act. That result can be attained, as a general rule, only by the judgment of a competent tribunal in a legal proceeding instituted directly for that purpose in which the cause of the forfeiture is judically ascertained and in which the grantee of the franchise is afforded reasonable notice and an opportunity to be heard according to the ordinary course of law. At least in the absence of a reservation in the grant (See Greenwood v. Union, Etc. R. R. Co., 105 U. S. 13, 26 L. Ed. 961; Omaha Water Co. v. Omaha (C. C. A.), 147 Fed. 1, 8 Ann. Cas. 614), acts of omission or commission contrary to or in violation of a corporate franchise, or the laws under which the franchise is enjoyed, do not *ipso facto* operate as a forfeiture, but may constitute an efficient cause for forfeiture in a proper action. The commission or omission of such acts, however, do not, as a general rule authorize an administrative officer to lawfully declare the franchise forfeited and terminated. See Higgins v. Downward, 14 Atl. Rep. 720; 32 Atl. Rep. 133, 40 A. S. R. 141; Mickles v. Rochester City Bank, 11 Paige (N. Y.) 118, 42 Am. Dec. 103; State v. Bank of Charleston, 2 McMul. L (S. C.) 439, 39 Am. Dec. 135, 12 R. C. L. 205, 7 R. C. L. 724, 7 C. J. 723. The provision of the statute is that the franchise shall be "subject to be forfeited," not that the Comptroller shall forfeit it. The authority of the Comptroller under Sec. 4162, *supra,* when there has been a violation of Sections 4151 and 4153, *supra,* as charged in counts 1 and 2, is to "designate and appoint a receiver to take charge of the assets and affairs of such bank." The appointment of such receiver

operates as a "suspension of the right to exercise the franchise of such bank * * * and such right (that is, the right *to exercise* the franchise) ceases to exist unless and until it shall have been reinstated * * * ." Power v. Amos, decided August 1, 1927. But the mere appointment of a receiver does not *ipso facto* work a dissolution of the corporation nor is such act tantamount to a forfeiture of its franchise. First National Bank of Bethel v. v. National Pahquioque Bank, 81 U. S. 383; 20 L. Ed. 840, *idem* 36 Conn. 325, 4 Am. Rep. 80; Chemical Nat'l Bank v. Hartford Deposit Co., 161 U. S. 1, 40 L. Ed. 595.

It is therefore apparent that the alleged failure of the Comptroller, as charged in counts 1 and 2, to "forfeit the rights, privileges and franchises" of the bank, being an act which he had no power to perform, nor one which the statute purported 'to authorize him to perform, is not a criminal offense, nor can it be made so by a charge that the Comptroller was actuated in such failure by a wilfully corrupt motive.

The third count is based upon Sec. 4140, Revised General Statutes, 1920, which requires every banking company "to have on hand at all times in lawful money of the United States an amount equal to twenty per cent of the aggregate amount of its (the bank's) deposits." The statute further provides that " * * * the Comptroller may notify any banking company whose lawful reserve shall be below the amount above required to be kept on hand to make good such reserve, and if such company shall fail in thirty days thereafter to make good its reserve of lawful money, the Comptroller may appoint a receiver 'to wind up' the business of the company as provided by Section 4162."

As the third count is fatally defective for another reason, we permit the question of whether or not, in view of the provision of Section 4140 just quoted, the charge of the

1032

third count that the Comptroller curruptly failed "to wind up" the business is tantamount to a charge that he corruptly failed "to appoint a receiver to wind up" the business of the company as provided by that section. Much that is hereinafter said upon that aspect of count 4 might perhaps also apply to count 3. It is unnecessary, however, to consider that question in connection with count 3.

Section 4140, *supra*, does not purport to constitute the mere existence of an impairment in the banks' reserve and the Comptroller's knowledge thereof the sole prerequisite to the existence of the Comptroller's duty to appoint a receiver. On the contrary, that section prescribes other intervening and indispensable prerequistes before the duty to appoint a receiver under that section comes into existence. That section, after providing for notice to the bank to make good its reserve, further provides that "if such banking company has failed within thirty days to make good its reserve of lawful money, the Comptroller may appoint a receiver to wind up the business of the company as provided in Section 4162." As we construe Section 4140, the duty imposed upon the Comptroller when an impairment of the legal reserve has occurred, is first to notify the banking company "to make good such reserve," thus affording an opportunity for a prompt restoration which would obviate the necessity for further action, and in the event of a failure "to make good" the legal reserve within the thirty-day period allowed by the statute, then to appoint a receiver for the purpose and in the manner provided by that section. The statute contemplates that such notice and opportunity to restore shall be a condition precedent to the appointment of a receiver. See People v. Milwaukee Avenue State Bank, 82 N. E. Rep. 853.

To charge, as does the third count, merely that the Comptroller, well knowing of the existence of an impairment in

the bank's legal reserve "failed to wind up the business of the bank" entirely ignores an indispensable prerequisite or condition to the existence of the Comptroller's authority to take the action it is charged he corruptly failed to take. Until the preliminary notice and the opportunity to restore the impaired reserve has been given as provided in Section 4140, *supra,* there is no authority in the Comptroller under that statute, and consequently no duty on his part, to appoint a receiver to wind up the business. The third count does not purport to charge that the Comptroller corruptly failed to give notice to the bank to make good its impaired legal reserve, nor that having given such notice and the bank having failed to make good the legal reserve within thirty days, the Comptroller then corruptly failed to appoint a receiver to wind up the business of the company. The introductory recitals of the third count apparently recognize the preliminary notice to the bank and the opportunity to make good its legal reserve as a prerequisite to the existence of the duty to appoint a receiver, but the count merely charges, in effect, that the Comptroller failed and refused "to wind up the business" of the bank, "well knowing that the legal reserve had fallen below the legal requirement of 20% * * *," omitting all reference to the prerequisites which must have been satisfied before the duty to appoint a receiver comes into existence. As even a corrupt failure to appoint a receiver merely upon the knowledge of the Comptroller of an impairment in the legal reserve, and without the happening of the stated prerequisites, is not and can not be pleaded so as to constitute a criminal offense, the third count must also fail.

Count 4 charges a wilful and corrupt failure and refusal on the part of the Comptroller "to wind up the business of and declare to be forfeit the rights, privileges and franchise" of the bank. What has been said in connection with

counts 1 and 2 dispose of the latter phase of this charge relating to forfeiture. The remaining aspect of the charge —that the Comptroller failed to "wind up the business" must also fail under the plain terms of the statutes. The offense contemplated by this count, as well as the other counts, is to be found, if at all, in the corrupt failure of the Comptroller to perform a discretionary civil duty imposed upon him by the statute. The allegations as to the duty, the corrupt failure to perform which is alleged to constitute the common law offense of malpractice, are to be strictly construed. To determine the duty of the Comptroller under the circumstances charged in the fourth count, resort must be had to Sections 4162, 4166 and 4167, Revised General Statutes 1920, which must be construed in *pari materia*. Amongst other things, Section 4162 provides that when the Comptroller has become satisfied that a State Bank is "in an unsound condition, or threatened with insolvency because of illegal or unsafe investments, * * * the State Comptroller may forthwith designate and appoint a receiver to take charge of the assets and affairs of such bank * * * and such receiver shall be subject to dismissal by the Comptroller whenever in his judgment such dismissal is deemed necessary or advisable * * *." Section 4167 provides, in effect, that if the Comptroller shall have reason to conclude that a State Bank "is in an unsound or unsafe condition, he shall forthwith take possession of the property and business of such bank * * * and retain such possession until the affairs are placed in a sound and safe condition, or until a receiver is appointed as provided by law * * *." Section 4166, *supra,* which relates to all receivers appointed by the Comptroller pursuant to any of the statutes mentioned, provides, in effect, that the receiver so appointed "shall at all times be under the supervision and control of the Comptroller, and subject

at all times to summary discharge and dismissal by him, and any vacancy in such receivership may be filled by the Comptroller at any time.'' Construing these statutes in *pari materia,* it will be seen that the discretionary duty and authority of the Comptroller in the circumstances named, the corrupt failure or refusal to perform which might constitute the common law offense of malfeasance, is either to ''forthwith take possession of the property and business of such bank * * * and retain the same until the affairs are placed in a sound and safe condition * * *,'' or ''to forthwith designate and appoint a receiver to take charge of the assets and affairs'' of the bank. Such a receiver, when appointed, is in effect a mere representative of the Comptroller for administrative purposes. See Bryan v. Bullock, *supra.*

There is no specific duty imposed upon the Comptroller under the circumstances alleged in the fourth count ''to wind up the business'' of the bank, nor does a full and compete performance of the duty that is imposed necessarily involve a ''winding up of the business'' of the bank as that expression is ordinarily understood when used in this connection. To ''wind up'' the affairs of a business is usually understood to be substantially synonymous with to ''liquidate'' the business. In its general and usual sense, to ''liquidate'' a business means to assemble and mobilize the assets, settle with the creditors and debtors, and apportion the remaining assets, if any, amongst the stockholders or owners, thereby permanently terminating the affairs of the business. See Assets Realization Co. v. Howard, 127 N. Y. Supp. 798, 816; In re: Skillman, 105 N. Y. Supp. 872, 875; Hanley v. Sims, 94 N. E. Rep. 401; Richmond v. Irons, 121 U. S. 27, 30 L. Ed. 864; L. D. Garrett Co. v. Morton, 71 N. Y. Supp. 17. Used in this connection, the word ''liquidate'' usually conveys a slightly different meaning than when used in other

connections when it is frequently if not usually held to mean "that which is ascertained, made certain or reduced to a clear and definite basis," as "liquidated damages," or a "liquidated account," although Mr. Justice Story, in Fleckner v. Bank of U. S., 21 U. S. (18 Wheat.) 338, 5 L. Ed. 631, said, in effect, that "to liquidate" a balance is not merely to ascertain the balance due, but to pay it.

The authority and duty of the Comptroller either to himself take charge of the assets and affairs of the bank, or to appoint an agent called a receiver for that purpose, may perhaps imply authority to wind up or liquidate the business of the bank in proper cases. Either of those courses of action on the part of the Comptroller might frequently, if not usually, lead to that ultimate result. On the other hand, it might not. In proper instances, and when actuated by proper motives, a course of action by the Comptroller which ultimately results either in a liquidation of the bank or in a restoration of its business and affairs to its owners, might be compatible with a full performance by the Comptroller of his duty in the circumstances under consideration.

The duty imposed upon the Comptroller is either to take charge or to appoint his receiver for that purpose. A consequence of the proper performance of that duty is sometimes, and perhaps frequently, a winding up or liquidation of the business. But the "winding up" is a result—a contingent result—which is not necessarily involved in nor indispensable to a proper performance of the duties imposed upon the Comptroller by the statutes last mentioned, and one which may or may not follow, though the Comptroller's duty be fully performed. Being a result, it must be charged, if at all, as a result, and in its proper perspective or relation to the duty of which it is the result, and

upon the performance of which it depends. Under existing statutes, the corrupt failure to "wind up" is not and can not be made, within itself, a primary or substantive offense under the circumstances alleged in the fourth count. To charge only a failure under those circumstances to "wind up," not only omits a primary and hence an indispensable element of the offense sought to be charged, namely, a corrupt failure to perform the statutory duty of which the failure to wind up is a contingent result, but charges only an omission to act which is not and can not, alone and within itself, be pleaded so as to constitute an offense. See *Ex parte* Robinson, *supra; Ex Parte* Hays, 25 Fla. 279, 6 South. Rep. 64. The fourth count therefore charges no act which is in law a criminal offense.

It is the judgment of the Court that the petitioner be and he is hereby discharged from custody.

ELLIS, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.