STATE OF IOWA ex rel. BEN J. GIBSON, Attorney General, Plaintiff, v. AMERICAN BONDING & CASUALTY COMPANY et al., Defendants, Appellants, UNITED STATES OF AMERICA, Claimant, Appellee.

No. 43959.

AUGUST 5, 1938.

F. E. Gill and Gill & Gill, for appellants American Bonding & Casualty Company and W. F. Grandy, Receiver.

E. G. Dunn, Robert H. Jackson, Homer R. Miller, and James W. Morris, for appellees United States of America, and Charles D. Huston, Collector of internal revenue.

DONEGAN, J.—The American Bonding & Casualty Company was incorporated on June 2, 1916, under chapter 4, title 9, of the Code of Iowa, 1897, and thereafter conducted a casualty insurance business pursuant to its articles of incorporation. In February 1921, on petition of the State of Iowa ex rel. Ben J. Gibson, attorney general, the action, in connection with which the claim here involved originated, was instituted against the corporation in the district court of Woodbury county, Iowa, and on February 26, 1921, a decree was entered by said court, finding that the said company was insolvent, directing its dissolution, and appointing W. F. Grandy as permanent receiver thereof. Pursuant to this decree, Grandy qualified and entered upon the performance of his duties as such receiver, and continued to act in that capacity at all times thereafter. The principal assets of the corporation consisted of securities, which had been deposited with the commissioner of insurance of the state of Iowa, in the amount of approximately $700,000, and, on application of the receiver, these securities were turned over to him. In addition to these securities there were other securities owned by the corporation, consisting of mortgages not exceeding $100,000 and bonds not exceeding $50,000, which also came into the hands of the receiver. The corporation had been doing business in many other states, as well as in Iowa, and a large number of claims aggregating extensive sums of money were filed in the receivership. Because of the great number and magnitude of the claims, and the litigation connected with the proving and allowance thereof, it was impossible to make immediate distribution, and, instead of reducing the assets in his hands to cash, the receiver, under direction of the court, collected the

interest on the securities in his hands, collected the rents of real estate which came into his hands under foreclosure of mortgages held by him, invested the moneys that thus came into his hands in additional securities, and collected the income therefrom. No federal income tax was paid upon the income thus derived by the receiver, and, in November 1934, United States of America filed a claim against the corporation and the receiver in the district court of Woodbury county, Iowa, for income taxes for the years 1924 to 1932, inclusive, in the sum of $72,290.56, and asked that an order be entered directing payment thereof. The receiver filed objections to this claim on several different grounds. Trial was had upon the claim and the objections filed by the receiver thereto, and, on the 15th day of September, 1936, the trial judge filed his opinion and findings, in which he allowed the claim in the sum of $59,956.35, and entered a decree directing its payment. From such finding and decree of the trial court, the American Bonding & Casualty Company, and W. F. Grandy, receiver thereof, have appealed to this court.

There is practically no dispute in regard to the facts of this case, and this appeal involves purely questions of law. These questions have been presented to us by the appellants in the form of errors relied upon for reversal. Such errors have been alleged in six separate divisions of the appellants' brief and argument, but the questions thus raised may be reduced to three fundamental propositions: 1. Whether the federal statutes relied on by claimant were intended to impose or validly could impose income taxes on income derived from property of an insolvent and dissolved corporation during the time such property was in the hands of a receiver appointed by a state court, and in process of liquidation. 2. Whether the reports filed by the receiver with the income tax collector were sufficient to start the running of the statute of limitations as to assessments of income taxes for the years for which such reports were made. 3. Whether the trial court erred in holding that the burden was on the receiver to establish deductions which he claims should have been allowed in connection with the income taxes assessed in this case.

I. The first error which the appellants contend was committed by the trial court was in holding that a valid assessment for income tax could be made and charged against the

dissolved corporation or the liquidating receiver. Appellants contend that, as the corporation was dissolved in February 1921, it ceased to exist as a corporation at the time such order of dissolution was made, and that the corporation, as such, could not have any income thereafter and could not, therefore, be subject to an income tax. The statutes upon which the claimant is relying in this case are section 239 (a) of the Revenue Act of 1924, 43 Stat. 287, section 239 (a) of the Revenue Act of 1926, 44 Stat. 45, and section 52 (a) of the Revenue Act of 1928, 45 Stat. 808, 26 U. S. C. A. §52 and note. These several sections are substantially identical in language and, so far as the question now under consideration is concerned, it will be sufficient to consider the provisions of section 239 (a) of the Revenue Act of 1924, which is as follows:

"Every corporation subject to taxation under this title shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this title. * * * In cases where *receivers,* trustees in bankruptcy, or assignees are *operating* the *property or business of corporations,* such *receivers,* trustees or assignees *shall make returns for such corporations* in the same manner and form as corporations are required to make returns. *Any tax due on the basis of such returns made by receivers,* trustees or assignees *shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control.*" (Italics are ours.)

Appellants concede that this section is applicable to cases where the regular *business* of a corporation is carried on by a receiver, but contend that it does not apply in cases such as this, where the activities of the receiver are confined to such matters only as are connected with the dissolution and winding up of the affairs of a corporation. In other words, the appellants contend that the statute relied upon by the claimant is applicable only to *operating* receiverships, and that it is not applicable to a liquidating receivership, which, they say, exists in this case.

Appellants place great reliance on In re Owl Drug Co., 21 Fed. Supp. 907, decided by the United States District Court for the district of Nevada. In that case a corporation which owned and operated a chain of drug stores went into bank-

ruptcy. The stores were sold by the trustee in bankruptcy, the money derived from the sale was deposited in banks, and interest on such money was paid to the trustee by the banks. The United States claimed an income tax on the money received by the trustee as interest on these bank deposits. After citing authorities to the effect that to "operate", within the meaning of the statute, implies the exercise of activity in connection with the thing operated, not sporadically, but continuously over a definite period of time (in which connection reference is made to the opinion of the trial judge in the instant case), the opinion proceeds to state:

"After the bankruptcy, the trustee continued to operate the stores for a while. Then he sold them. When he did, *the business of the bankrupt was liquidated.* The only property in the hands of the trustee was the money received from the sale. This he was holding, subject to bankruptcy administration. While he operated the drug stores, his income was clearly *income from operation.* After the sale, the interest received from the deposit of the money in various banks was earned, not by the bankrupt's business, but by the money into which the business had been transmuted through the sale. In holding the money, the trustee was 'not pursuing the ends for which the corporation was organized.' See Edwards v. Chile Copper Co., 1926, 270 U. S. 452, 455, 46 S. Ct. 345, 346, 70 L. Ed. 678. It is true that if a trustee were to take over a bank, a trust company, an investment house, or some other concern which engages chiefly in loaning money, or if the trustee in an estate, the liquidation of which extended over a period of years, invested the funds of the bankrupt in promissory notes or securities, the interest or gain thus obtained *might* be considered income. This was the situation in State of Iowa ex rel. Gibson v. American Bonding & Casualty Co., supra,—involving a bonding and casualty company, the funds of which the trustee reinvested—upon which the Government relies. But the lending of money or putting it out at interest *was not* the business of the bankrupt here, or incidental to it. Its business was *the operation of drug stores.* Their sale liquidated the business and terminated the 'operation' of the trustee. There remained in his hands money representing the purchase price deposited under order of the court in banks to abide the distribution of

the estate. *Granted that interest on this money is a gain, it is not a gain derived from the operation of the business or the property of the bankrupt.*" (Italics appear in the opinion.)

■ In our opinion, the In re Owl Drug Co. case does not support the appellants' contentions. In that case, the business of the corporation was the operation of drug stores and not the investment of money or collection of interest thereon, and the mere acceptance of interest on moneys deposited in bank, for a brief interval pending its distribution, could not reasonably be termed the *operation* of the business or property of the corporation. In the instant case, however, while the principal part of the business of the corporation was the writing of casualty insurance policies, it cannot be said that the investment of the corporation's funds in securities such as mortgages and bonds, and the collection of rents of real estate coming into the possession of the corporation on mortgage foreclosures, was not a part of the business of the corporation. Prior to the dissolution of the corporation, securities approximating $700,000 in value were on deposit with the insurance commissioner, and something less than $100,000 in mortgages and $50,000 in bonds were in the possession of the corporation. Even as to the securities on deposit with the insurance commissioner, the income belonged to the corporation and, so far as the record shows, was collected by the corporation prior to its dissolution. As to the securities not deposited with the insurance commissioner, the work connected with the investment of the corporation's funds in these securities and the collection of the income therefrom was properly a part of the operation of the business, or at least the property, of the corporation. The opinion in the Owl Drug Co. case clearly recognizes the difference between the facts of that case and the case at bar, and the concluding statements of the portion of the opinion above quoted, to the effect that, even though the interest on the money was a gain, it was not a gain derived from the operation of the business or property of the bankrupt, cannot be applied to the facts of this case.

We think the question here discussed was very clearly and convincingly considered in the written opinion of the trial judge in the instant case wherein, after considering the meaning of the words "operating", "property", and "business",

644

and sustaining his conclusion as to the meaning and implication of these words by abundant authority, he proceeded to say:

"The receiver says he is a liquidating receiver. To liquidate in its general and usual sense means to assemble and mobilize the assets, settle with the creditors and debtors, and apportion the remaining assets, if any, among the stockholders or owners. Ex parte Amos, 94 Fla. 1023, 114 So. 760, 765, Lafayette Tr. Co. v. Beggs, 213 N. Y. 280, 107 N. E. 644, 645, Gilna v. Barker, 78 Mont. 357, 254 Pac. 174, Rohr v. Stanton Tr. & Sav. Bank, 76 Mont. 248, 245 Pac. 947, 948.

"Applied to corporations it means the act or operation of winding up the affairs of a company by getting in the assets, settling with the debtors and creditors and appropriating the amount of profits or loss. 37 C. J. 1265, and cases cited.

"In one sense this receivership is a liquidating receivership as the ultimate object is the liquidating of the company and it is true that the receiver was not operating the business as it was conducted by the corporation. On the other hand can it be said that he was not operating a part of the business, that of investing the assets for the purpose of deriving revenue therefrom under the specific orders of this court. A fortiori he was operating the property, within the meaning of the word as above defined, in taking possession of the assets, notes, bonds, and mortgages, collecting them, selling certain bonds and mortgages and reinvesting the proceeds in other bonds, mortgages, and securities, in managing such real estate as the corporation owned or the receivership acquired, in leasing, repairing, and collecting the rents and revenues therefrom. It seems to me that this receivership comes fairly within the phrase 'receiver operating the property or business,' especially in connection with the words occurring later in the statute, 'of whose business or property they have custody and control.' "

■ It is further argued by appellants that, if the statute under which the claimant is attempting to collect the income tax involved in this case is construed as authorizing such action, that statute is unconstitutional because violative of the rights of the state government exercised through the state court and the receiver, as an officer of the court. A great many cases

have been cited by the appellants in support of this conten-tion, but an examination of these cases convinces us that none of them is applicable to the situation with which we are here confronted. True, the action, in connection with which the claim here involved was filed, was brought on behalf of the state by its attorney general, the receiver is an officer of the state court, the property in his hands is the property of a cor-poration created by the state and is being administered by the receiver, under orders of the court, with a view to its ultimate distribution in payment of the claims of the corporation's creditors. Conceding that the state alone had the right to in-stitute the original action and that such action was brought by the state, in its governmental capacity, through its attorney general, because it involved the dissolution of a corporation, which was the creature of the state, we are unable to see in what way the state has any more interest in the liquidation and distribution of the corporation's assets than it would have in any other receivership in which a state court had taken control of the property of a litigant for the purpose of pre-serving it until the rights of all parties with regard to such property could be adjudicated and enforced. The property in-volved is not the property of the state, is not claimed by the state, and, aside from the payment of costs and the expenses of the receivership, the state is not directly interested in the distribution of this property. The claim here involved, like all other claims, is not against the state but against the prop-erty of the corporation in the hands of the receiver. If, as conceded by appellants, the assessment and collection of an income tax in what appellants term an operating receivership would be valid, why are these same acts invalid as an invasion of constitutional governmental powers of the state, when the income is derived from the operation of the business or the property of the corporation in what appellants call a liquidat-ing receivership? We see no good reason for such a distinc-tion, and we think it is contrary to the doctrines recognized in the cases in which somewhat analogous questions have been considered. Coy v. Title Guarantee & Trust Co., D. C. Or., 212 Fed. 520; Buckley v. Commissioner, 2 Cir., 66 Fed. 2d 394, 397; So. Carolina v. United States, 199 U. S. 437, 26 S. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737; Metcalf & Eddy v. Mitchell, 269 U. S. 514, 518, 46 S. Ct. 172, 70 L. Ed. 384; Helvering v. Powers,

646

293 U. S. 214-225, 55 S. Ct. 171, 173, 79 L. Ed. 291; Ohio v. Helvering, 292 U. S. 360-368, 54 S. Ct. 725, 726, 78 L. Ed. 1307; Helvering v. Therrell, Commissioner, and three other cases, 303 U. S. 218, 58 S. Ct. 539, 82 L. Ed. 758.

We find no error in the holding of the trial court that the income derived by the receiver from the property of the corporation which was in his hands was subject to the income tax for which claim is made in this case.

■ II. Appellants allege that the trial court erred in holding that the appellee's claim was not barred by the statute of limitations as to all assessments, except that for the year 1932. The provisions of the Revenue Acts of 1924, 1926, §239 (a), and 1928, §52 (a), which are identical in language, require that, every corporation, subject to taxation for income tax purposes, "shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this chapter. * * * In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns." 26 U. S. C. A. §52. These Acts also provide that such income taxes "shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period." 26 U. S. C. A. §275. Appellants contend that timely returns were filed by the receiver in each of the years for which taxes are claimed, but that no assessment for any of those years was made until July 1934, more than three years after the filing of all the returns, except that for the year 1932. Appellee, on the other hand, contends that no return was ever filed for any of these years, and that the requirement of an assessment "within three years after the return was filed" does not apply to any of the taxes here involved. Appellee bases this contention upon the requirements of the statute as to what constitutes a return. These statutes require that the return made by the receiver must contain an itemized and specific statement of gross income, deductions, and credits, as set out on a blank form for such return issued by the department. It is admitted that, during each of the years for which claimant seeks to impose an income

tax, the form of return provided by statute was signed by the receiver and filed with the income tax collector, but the appellee contends that none of the forms of returns thus filed constituted a return within the meaning of the statute. It is undisputed that none of the blank spaces in the forms of returns filed by the receiver were filled out, and that the only entry or statement made by the receiver, on any of the forms of returns filed by him, was the statement written across the face of the return, as follows: ''This Company declared hopelessly bankrupt by the Courts and a permanent Receiver was appointed Feb. 26, 1921. It is now in process of liquidation.''

From the plain language of the statutes themselves, as well as from a consideration of the cases in which these statutes have been construed, we think it manifest that the mere filing of a form of return, containing none of the information that the law contemplates should be furnished in a return, and containing nothing but the statement written across the face of each of the forms filed by the receiver in this case, does not constitute a return and would not start the running of the statute of limitations as to making an assessment. Appellants argue that the statement contained on the forms of return filed by the receiver, and letters sent by the receiver to the commissioner of internal revenue, were sufficient to inform the department that the receiver believed and was claiming that his net income was not taxable, that he was requesting a ruling by the department on this question, and that, under the holding in United States v. Mabel Elevator Co., D. C., 17 Fed. 2d 109, this was sufficient to start the running of the statute of limitations. The facts in the cited case were quite different from those in the instant case and, in our opinion, it furnishes no support for the appellants' contention. In that case a return had been filed, a further return was requested for a part of the year covered by the filed return, and the court held that the return which had been filed started the running of the statute. In the instant case, neither the forms of return filed by the receiver, nor the letters, in which he claims to have requested a ruling, contained any of the data or information which the statutes require to constitute a return, and, under the holding of the courts, they were insufficient to start the running of the statute of limitations in this case. United States v. Updike, D. C., 1 Fed. 2d 550; Updike v. U. S., 8 Cir., 8 F.

2d 913; Lucas v. Pilliod Lumber Co., 281 U. S. 245, 50 S. Ct. 297, 74 L. Ed. 829, 67 A. L. R. 1350; Florsheim Bros. Drygoods Co. v. United States, 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542; Lucas v. Colmer-Green Lumber Co., 5 Cir., 49 Fed. 2d 234; United States v. National Tank & Export Co., 5 Cir., 45 Fed. 2d 1005. Other cases are cited by appellant, but an examination of these cases leads us to the conclusion that they are not applicable to or decisive of the proposition here presented. We find no error in the holding of the trial court, that the assessments, upon which the taxes claimed by the appellee were based, were not barred by the statute of limitations.

III. Finally, appellants allege the trial court erred in refusing to allow certain deductions claimed by them. The claim filed by the appellee made no allowance of deductions for the receiver's compensation, attorney's fees, referee's fees, court costs and other expenses connected with the hearing and determination of the validity of claims filed in the receivership. Under the provisions of the Revenue Acts of 1924, 1926, §234 (a), 43 Stat. 283, 44 Stat. 41; 1928 and 1932, §23 (a), 45 Stat. 799, 47 Stat. 179, 26 U. S. C. A. §23 (a), it is provided that, in computing the net income, there shall be allowed as deductions, "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered." The trial court held that, in conducting the business of investment and operating the property, under order of the court, the receiver was giving personal service in making such investments, and that the salary of the receiver, fixed by the court on the basis of his personal service, was clearly deductible as an expense of the business carried on by him in operating the property and part of the former business of the corporation, and should be allowed as a deduction in computing the net income. No appeal has been made by the claimant from this holding of the trial court.

As to the other deductions claimed by appellants—attorney's fees, referee's fees, court costs, and other expenses—the trial court held that, under the record made on the trial of the case, these claimed deductions should not be allowed. The trial court's holding as to these claimed deductions had as its basis the following propositions: 1. That the assess-

ment made by the collector of internal revenue is prima facie correct, and prima facie evidence of the amount due. Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131; Becker v. United States, 5 Cir., 21 Fed., 2d 1003; Anderson v. Farmers L. & T. Co., 2 Cir., 241 Fed. 322. 2. That the laws of the state of Iowa, upon which the appellants rely, cannot change the well-established rule that, ''Federal taxing laws cannot. be controlled by State statutes or by rules of law governing decisions in State courts.'' Fidelity-Philadelphia Trust Co. v. Commissioner, 3 Cir., 47 Fed. 2d 36, 38; Hart v. Commissioner, 1 Cir., 54 Fed. 2d 848, 851. 3. That, unlike the salary of the receiver, which was clearly deductible under the express provisions of the statutes, the burden was on the appellants to establish their claims for such deductions not allowed by the commissioner, because not every legitimate expense of the receivership, but only such as are ordinary and necessary to carry on the trade or business, are deductible. Homes Fed. Income Taxes, 5th Ed., p. 268. 4. That it is impossible to determine from the record what proportion of the amounts paid out in the receivership for attorney's fees, court costs, referee's fees and expenses. and other expenditures claimed by appellants as deductible, can be allocated to the property or business of the corporation, and what are properly chargeable to purely processes of liquidation. The trial court, therefore, held that no part of the deductions for such expenses could be allowed. We think the authorities relied upon by the trial court fully sustain the position taken by it, and we find no error in its holding as to the deductible expenses of the receivership, other than the salary of the commissioner, which was allowed.

Finding no error in the findings and decree of the trial court, such findings and decree are hereby affirmed.—Affirmed.

SAGER, C. J., and KINTZINGER, RICHARDS, MILLER, HAMILTON and STIGER, JJ., concur.

ANDERSON, J., takes no part.