174

## MENDELSUND v. SOUTHERN-AIRE COATS OF FLORIDA, Inc., et al.
### No. 66-C-6002.
Circuit Court, Dade County.

November 7, 1966.

Kaplan & Shapiro, Miami Beach, for plaintiff.

Bernard B. Weksler and Roy M. Schenerlein, both of Miami, for respondents.

BYRD V. DUKE, Jr., Circuit Judge.

*Final decree:* This cause came on for final hearing upon the plaintiff's "Motion and Application for Enforcement of Foreign Judgment upon Award of Arbitrator" and the answers of the

respondents thereto. After hearing the testimony, and examining the exhibits and considering the briefs submitted by able counsel, and after being duly advised in the premises, the court finds as follows —

### Findings of fact

On June 1, 1964 the plaintiff, hereinafter referred to as "the union" entered into a collective labor agreement with the New York Coat and Suit Association, Inc., a group composed of Eastern garment manufacturers. A New York corporation known as Larry Levine, Inc. was a member of the association and agreed in all respects to be bound by all the provisions of the union agreement. Respondent Southern-Aire Coats of Florida, Inc., a Florida corporation, was not a member of the New York Coat and Suit Association, Inc., and never agreed to be bound by the union agreement. The corporate respondent operates a non-union garment business with its principal place of business in Dade County, Florida. Prior to October 1965, the three equal stockholders of the Florida corporation were Mr. Larry Levine, respondent Louis Dworkin, and Mr. Martin Goldberg. Larry Levine, Inc., the New York corporation, did not own any stock of the Florida corporation, although both Mr. Levine and Mr. Dworkin owned stock of Larry Levine, Inc.

On June 16, 1965 the union filed a complaint solely against the New York corporation, Larry Levine, Inc., charging it with violating the collective bargaining agreement in various respects. The complaint demanded an award for damages and for affirmative mandatory orders. Under the terms of the agreement, the complaint had to be heard by an "impartial chairman" designated in the agreement.

A hearing *"In the Matter of Larry Levine, Inc., upon Complaint of the Union against the above member of the New York Coat and Suit Association for violation of the collective agreement"* was scheduled before the "impartial chairman" for July 7, 1965. The respondents were not personally present at the hearing, but the respondent Louis Dworkin was represented by counsel. The court finds that respondent Southern-Aire Coats of Florida, Inc. did not authorize or consent to any attorney representing it at the hearing. No testimony was presented, but after colloquy of counsel for the union and Larry Levine, Inc., the hearing was adjourned to July 14, 1965. In the meantime, by agreement of Larry Levine, Inc. and the union and through the voluntary cooperation of Southern-Aire Coats of Florida,

Inc. (at the request of one of its stockholders, Mr. Larry Levine), an accountant attached to the office of the "impartial chairman" came to Florida and made an examination of the books and records of Southern-Aire Coats of Florida, Inc.

At the hearing before the "impartial chairman" on July 14, 1965, the counsel for Larry Levine, Inc. and for Louis Dworkin — without the approval or authorization of the board of directors of the Florida corporation — stated that the Florida corporation submitted to the jurisdiction of the "impartial chairman". This court finds there was no such submission.

This court expressly finds from the evidence and testimony that Southern-Aire Coats of Florida, Inc. did not submit or consent to the jurisdiction of the "impartial chairman" or the jurisdiction of the New York state court. The record is completely barren of any showing that the corporation or the board of directors of the corporation agreed to the dissolution or liquidation of Southern-Aire Coats of Florida, Inc.

The attorney for Larry Levine, Inc., without authorization or competent facts, informed the "impartial chairman" that Southern-Aire Coats of Florida, Inc. was the alter ego of Larry Levine, Inc. and — based upon such information which was not supported or corroborated by any evidence whatsoever — the "impartial chairman" approved a settlement proposed by the counsel present at the hearing on July 14, 1965. The settlement provided, in part, that Larry Levine, Inc. would pay a stated amount to the union as damages for the admitted violations, that Southern-Aire Coats of Florida, Inc. would liquidate its business not later than September 30, 1965, and that neither firm would violate the collective agreement any further. The decision of the "impartial chairman" was to be withheld pending compliance by Larry Levine, Inc. and by Louis Dworkin and Larry Levine, individually, with the settlement offer.

The settlement offer was not agreed to, approved by, or ratified by Southern-Aire Coats of Florida, Inc. and the record is clear that Mr. Martin Goldberg, as president of Southern-Aire Coats of Florida, Inc. and as a stockholder therein, did not have any knowledge of the counsel for Larry Levine, Inc. agreeing to such settlement as a purported counsel for the Florida corporation.

The union agreement specifically provided inter alia that in the event an award was entered by the "impartial chairman" and the award was not complied with, the aggrieved party was to file a written complaint of non-compliance. (See pp. 60-65

of the agreement). The agreement further provided that, after a written complaint of non-compliance was filed, it was then the duty of the "impartial chairman" to notify all parties and to have a hearing on the complaint of non-compliance.

The union, without filing any written complaint of non-compliance, informally advised the "impartial chairman" that the damages agreed upon with Larry Levine, Inc. had been paid; that Messrs. Larry Levine and Louis Dworkin had disassociated themselves at the end of October, 1965, from Southern-Aire Coats of Florida, Inc.; that Mr. Martin Goldberg, who had become the Florida corporation's sole stockholder, refused to reveal whether he would continue the operation of the corporation or would liquidate the corporation; and that Southern-Aire Coats of Florida, Inc. had refused to liquidate its business, and still continued to operate as a non-union shop. The "impartial chairman" was also informally advised by the union that Mr. Dworkin was still participating in the affairs of Southern-Aire Coats of Florida, Inc.

Without notifying the respondents herein of the union's unofficial advice or complying with the rudimentary requirements of due process and granting them an opportunity to be heard, the "impartial chairman" entered a decision and award on January 31, 1966. The decision and award, inter alia, ordered and directed Larry Levine, Inc. to comply with the agreement, and ordered —

> "Southern-Aire Coats of Florida, Inc., its officers, directors, stockholders, agents, servants and employees are hereby ordered and directed to liquidate its business forthwith, that such liquidation be real and genuine and that none of its assets be sold to any corporation or firm in which Messrs. Goldberg, Levine or Dworkin, or any of them, acquires any financial interest, directly or indirectly, or in which they or any of them become employed or for which they or any of them will perform any services of any kind whatsoever, directly or indirectly, or in which they or any of them participate, directly or indirectly, or through relatives, appointees or designees."

The decision and award further ordered that respondent Louis Dworkin, was not to become associated in any capacity whatsoever, directly or indirectly, either as an officer, director, stockholder, agent or employee, or otherwise, with Southern-Aire Coats of Florida, Inc., directly or indirectly or through relatives, appointees, or designees.

After the "impartial chairman" entered his decision and award, the union filed litigation in the New York supreme court, a trial court, seeking enforcement of the decision and award of the "impartial chairman". The respondents in the New York court were Larry Levine, Inc., Southern-Aire Coats of Florida, Inc., Larry Levine and Louis Dworkin. It is significant to note and find that Mr. Martin Goldberg, who had been the sole stockholder of Southern-Aire Coats of Florida, Inc. was not named as a respondent in the New York court action, nor was he ever considered a respondent in the arbitration proceedings before the "impartial chairman".

Without hearing testimony or delving into the merits of the decision and award of the "impartial chairman" or the authority of the "impartial chairman" to enter such decision and award, the New York supreme court, on motion of the union, entered judgments confirming the decision and award of the "impartial chairman" and entered the same mandatory directives of the "impartial chairman" ordering the liquidation of Southern-Aire Coats of Florida, Inc. and the disassociation of Louis Dworkin from the Florida corporation. The judgment against Louis Dworkin was entered on April 15, 1966; and the judgment against Southern-Aire Coats of Florida, Inc. was entered on April 29, 1966.

After the entry of the New York judgments, the union filed this instant litigation and has asked this court of equity to adopt and enforce the judgments of the New York supreme court.

The union is not active in the state of Florida and does not maintain any offices in the state. Although Southern-Aire Coats of Florida, Inc. is a non-union shop, as it has a right to be under the Florida constitution, the union failed to show any harm or irreparable injury that would result to it if the corporation was not liquidated. Southern-Aire Coats of Florida, Inc. furnishes employment to a number of persons, and the forced liquidation of the business would cause the employees to lose their positions and would cause Mr. Martin Goldberg, the sole stockholder, to lose an investment of approximately $50,000. Mr. Goldberg was never a party to the New York action, and if he were compelled to liquidate or dissolve his solely-owned corporation, he would be deprived of substantial property without due process of law.

The union failed to show that respondent Louis Dworkin had failed to comply with the judgment of the New York supreme court. There was no proof or showing that the individual respondent was associated in any way whatsoever, directly or indi-

rectly, with the respondent, Southern-Aire Coats of Florida, Inc. and there was no allegation or proof of irreparable harm or injury that would result to the union if injunctive relief was not granted. For all that appears in the record, the union is trying to prevent Mr. Dworkin from working with Southern-Aire Coats of Florida, Inc. because the Florida corporation is a non-union shop. However, the court finds that Mr. Dworkin consented to and submitted to the jurisdiction of the "impartial chairman" — and that the decision and award is binding upon him.

### Conclusions of law

From the foregoing facts and the law as stated hereafter, the court concludes that the plaintiff is not entitled to equitable relief and that this cause should be dismissed.

The plaintiff in seeking equitable relief and the enforcement of the New York judgments, wants this court to dissolve or liquidate a Florida corporation and to enter an injunction against Mr. Dworkin. The gist of the union's prayer is a dissolution of the Florida corporation, for under the judgment of the New York court "liquidation" of the corporation's business is tantamount and synonymous to "dissolution". The purpose of the dissolution or liquidation of a corporation, whether judicial or extrajudicial, is to wind up and settle the affairs of the corporation. In re Dutch O'Neal Motors of Louisiana, Inc. (La. App.), 148 So.2d 468. The practical difference between the "liquidation" of the corporation's business and the "dissolution" of the corporation insofar as the union is concerned, is a distinction without a difference, or the distinction between "Tweedledum" and "Tweedledee".

As a general rule, the dissolution of corporations, like their creation, is primarily and fundamentally a matter of legislative and not of judicial cognizance, and the only authority courts have to deal with the subject is the power conferred upon them by legislation. 19 Am. Jur. 2d, *Corporations,* §1628. A Florida corporation may be dissolved by the voluntary act of the corporation through the vote of the majority of the stockholders, §608.27(1), Florida Statutes, or by the incorporators before the corporation begins business, §608.31, or upon order of the court where opposing ownership interests are evenly divided, §608.28. A corporation may also be involuntarily dissolved for failing to make required reports or failing to pay prescribed taxes, §608.36 (1), and, in addition, the franchise of a corporation may be subject to forfeiture because of an abuse or misuse of the rights

and powers thereby granted. Ex parte Amos (1927), 94 Fla. 1023, 114 So. 760.

The law is clear that in the absence of express statutory authority, a court of equity has no power to dissolve a corporation. 7 Fla. Jur. *Corporations*, §35; 19 Am. Jur. 2d *Corporations*, §1629; Tampa Waterworks Co. v. Wood, 97 Fla. 493, 121 So. 789; In re Hollywood Bond & Mortgage Co. (D. C. Fla.), 51 F. 2d 255.

The board of directors of the respondent corporation did not consent or authorize the dissolution or liquidation of the corporation, and since respondent Southern-Aire Coats of Florida, Inc. is a Florida corporation, and the union is not a party or person authorized by Florida law to initiate dissolution proceedings, this court has no power or authority to dissolve the respondent corporation.

### Full faith and credit not applicable to corporations here

The union strenuously contends that this court can dissolve the respondent corporation by giving full faith and credit to the judgment of the New York supreme court ordering the liquidation of the corporation.

The full faith and credit doctrine is not applicable here. Full faith and credit under the United States constitution simply means that a judgment in one state must in the other state be given the full effect it is given by the law and the usage in the state of its origin. However, such meaning obviously presupposes that the judgment is within the subject matter jurisdiction of the court pronouncing it. Hence, inquiry on that point is always in order. Tilt v. Kilsey, (1907) 207 U.S. 43, 59, 28 S. Ct. 1.

The New York court did not have any power, authority or jurisdiction to dissolve or liquidate a Florida corporation whose assets are all in the state of Florida, and a corporation that is solely a creation of the Florida statutes. The New York judgment improperly seeking to dissolve or liquidate Southern-Aire Coats of Florida, Inc., a Florida corporation, imposes no duty upon this Florida court to recognize the judgment.

It is stated in 19 Am. Jur. 2d *"Corporations"*, §1628 that — "A decree of a court of another state ordering the dissolution of a corporation created by that state, where jurisdiction in the case has not been conferred by statute, is, as to such part of the decree, rendered without jurisdiction, and *is not required to be recognized in another state under the full faith and credit clause of the United States Constitution."* (Italics added.)

Obviously, the right to dissolve or liquidate a corporation is exclusive with the state which created the corporation. The courts of one state do not have the power to dissolve a corporation created under the laws of another state. 19 Am. Jur. 2d, *Corporations,* §1587.

In 23 Am. Jur., *Foreign Corporations,* §437, the principles are thus stated — "The courts of a state cannot adjudge a forfeiture of the charter or existence of a foreign corporation, or take away the franchises which the state of incorporation has conferred upon it. Nor has a court of one state the power to dissolve a corporation created by the laws of another state; the corporation retains its legal existence until dissolved by a proceeding in the state which created it."

In order to entitle the New York judgment to full faith and credit, the New York court must have had complete jurisdiction and the power to pass on the merits. When the court has no jurisdiction, its judgment is not entitled to the full faith and credit which the constitution demands. This court has the power to examine into the jurisdiction of the New York court.

The union relies upon the New York case of Leibert v. Clapp (1963), 247 N.Y.S. 2d 102, as authority that, even in the absence of explicit statutory authority for dissolution of a corporation, dissolution is available as a matter of judicial sponsorship. The union's reliance on Leibert is misplaced, inasmuch as the party seeking the dissolution was a minority stockholder who, on behalf of himself and other minority *stockholders,* brought an action to compel the directors to bring proceedings to dissolve a New York corporation. Since Leibert involved a New York corporation and *stockholders* of the corporation, the New York court did have jurisdiction in that case, but where, as here, the court action involves a Florida corporation, and the moving party is not a stockholder, the New York court was without jurisdiction. See also 16A Fletcher Cyclopedia, Corporations, §8097, wherein the author commented — "The courts of one state have no jurisdiction or power to dissolve a corporation created by another state."

When the court looks at the substance of this litigation, it is clear that the union is seeking to exact a penalty and a forfeiture from the respondents. Forfeitures and penalties are not favored by the courts. This proposition applies with full force to forfeitures of corporate charters. 16A Fletcher Cyclopedia, Corporations, §8035; In re Consolidated Gas Co. of New York, 56 Misc. 49, 106 N.Y.S. 407, aff'd 124 App. Div. 401, 108 N.Y.S. 823. Corporations should not be destroyed or liquidated without

abundant reason and the power of forfeiting their charters and depriving them of their corporate life should not be lightly exercised. J & I Block Co. v. Hi-Lo Corp., 182 Misc. 414, 48 N.Y.S. 2d 894.

The courts have been traditionally averse to decreeing forfeitures "especially in the suit of individuals who show no interest in the matter complained of." State v. Southern Building & Loan Association, 132 Ala. 50, 31 So. 375. Inasmuch as the union is seeking to obtain the penalty and forfeiture of liquidation by virtue of Southern-Aire's refusal to comply with a defective and improper decision and award of an "impartial chairman"[1], such alleged failure is not a ground for forfeiture under Florida law. The union, independently of statutory authorization, cannot sue to dissolve the corporation. 16A Fletcher Cyclopedia, Corporations, §8078.

Seemingly, the union places great weight on the New York court judgments and the unproven "fact" that the respondents herein consented and agreed to the decision and award of the "impartial chairman". Although respondent Louis Dworkin had consented and agreed to said decision and award, the respondent Florida corporation did not consent or agree to such decision and award. The alleged consent was made by an attorney who was not authorized by the board of directors to represent the corporation and enter into such consent. The union contends that in reliance upon such consent, it gave up an opportunity to recover some $300,000 in damages from Larry Levine, Inc., and accepted but $15,000 in lieu thereof. This court does not find or believe that the respondents should be penalized because the union made a "deal" with Larry Levine, Inc., whereby under the agreement Larry Levine, Inc. was not punished and the Florida corporation was to suffer the extreme penalty of dissolution. The union had a written agreement with Larry Levine, Inc. and may pursue its punitive and contract remedies, if any, in the New York courts against Larry Levine, Inc.

The public policy of this state does not permit Southern-Aire to be penalized by virtue of conducting a non-union business. Respondent Dworkin is not to be punished by virtue of his alleged association, if any, with non-union Southern-Aire. See

---

1. Although the court finds that the "impartial chairman's" decision and award was improper and not binding on Southern-Aire for many reasons, including failure of due process, lack of a contract binding Southern-Aire to arbitration proceedings, the arbitrator's usurpation of power, etc., it is not necessary to make such finding to decide this case.

International Ladies Garment W. U. v. Scherer & Sons, Inc., (1966) 188 So.2d 380; Retail Clerks International Association, Local 1625 AFL-CIO v. Schermerhorn, 83 S. Ct. 1461, 373 U.S. 746, 10 L. Ed. 678 affirming Florida, 141 So.2d 269.

Although this court is of the opinion that the decree of the New York court is effective against respondent Dworkin on the theory of full faith and credit, the union has failed to establish or prove any factual basis for injunctive relief against Mr. Dworkin — the union has not alleged or proven irreparable injury to it insofar as Mr. Dworkin is concerned. The writ of injunction is an extraordinary writ and its drastic remedy should be granted only cautiously and sparingly, and not as an instrument of oppression and injury. 17 Fla. Jur. *Injunctions,* §12. In deciding whether to accord injunctive relief, this court must be guided by the established rules of equity jurisprudence as applied to the facts. There is no basis for injunctive relief here.

Wherefore, the premises considered, it is ordered and decreed that — (1) This court has jurisdiction of the parties and the subject matter. (2) The equities are with the respondents and not with the movant. (3) The movant's prayers for this court to enter a final decree adopting and enforcing the judgments of the New York supreme court entered on April 15 and 29, 1966 are denied. (4) All costs are assessed against the movant.