## UNITED STATES v. METCALF.

### No. 10130.

Circuit Court of Appeals, Ninth Circuit.

Nov. 23, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, and Arthur Manella, Sp. Assts. to Atty. Gen., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, both of Los Angeles, Cal., for appellant.

Bailie, Turner & Lake, Allen T. Lynch, and Norman A. Bailie, all of Los Angeles, Cal., for appellee.

Before DENMAN, MATTHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order of the district court in a proceeding in which the above corporation was adjudicated a bankrupt and its property was in the course of administration by the appellee Trustee. The order disallowed a claim of appellant against the Trustee for taxes for the calendar years 1938 and 1939 upon the Trustee's income in his administration of the estate for these years. The referee's findings and decision adverse to the appellant were adopted by the district court, which held that there was no income tax due because the Trustee was not "operating the property or business" of the corporate bankrupt within the meaning of Section 52 of the Revenue Act of 1938, Ch. 289, 52 Stat. 447, 26 U.S.C.A.Int.Rev.Code, § 52 which reads in part follows:

"§ 52. Corporation returns.

"* * * . In cases where receivers, trustees in bankruptcy, or assignees are operating the property *or* business of corporations, such receivers, trustees, or assignees shall make [income tax] returns for such corporations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control." (emphasis supplied.)

There is no opinion of the District Judge giving his reasons for his order.

The assets of the adjudicated bankrupt were held by the trustee for a gradual but ultimate liquidation. Southern California was emerging from the depression and sales of the properties were slow. These properties consisted of various parcels of real estate, both improved and unimproved, ninety percent of it encumbered by a trust agreement of which the Security First National Bank of Los Angeles, hereinafter called the Bank, was trustee. By an agreement with the Bank, ordered approved by the court, the Trustee was empowered to sell parcels of the real estate at agreed release prices, the proceeds to go in part to the Bank and in part to the bankrupt estate. Of properties of over $800,000 in value, only $24,250 were sold in the two years here involved.

Among the real properties title to which is held by the Bank under the declaration of trust are two parcels—one of three and the other of six acres, separated by an intervening three-acre parcel belonging to third persons. Both parcels are situated adjacent to what is known as Channel No. 3 of Long Beach Harbor in the City of Long Beach, California. During the pendency of the bankruptcy proceeding producing oil and gas wells were drilled and other wells were being drilled or about to be drilled on nearby lands which adjoined and surrounded the two parcels. It was feared by the trustee and the Bank that the operation of these wells would drain away the oil and gas believed by the trustee to underlie the same. The trustee in bankruptcy did not have sufficient funds to enable him to drill any oil or gas wells. By and with the approval of the court, he leased the two parcels of land to Universal Consolidated Oil Company. Other lots in the same general area which were not of sufficient size to be covered by separate leases, were included in a community oil and gas lease wherein the Bankline Oil Company was the lessee.

Oil and gas royalties including bonuses actually paid to the trustee under the terms and provisions of the leases during the year 1938 amounted to $245,517.65 and during the year 1939 amounted to $206,333.36. These moneys were paid to the Bank by the trustee upon orders of the court to cover taxes assessed against the properties, record legal title to which was so held by the Bank as security for the indebtedness owing it, costs of engineering services for checking oil and gas production on the property leased to Universal Consolidated Oil Company, and to apply on account of the interest and principal owing on the secured debt of the said Bank.

While no general order of the court was made authorizing the trustee to conduct the business of the bankrupt corporation, the court in addition to the order for the oil leases, made orders authorizing the trustee to lease, pending sale thereof, unsubdivided lands, grant easements and rights of way to the City of Los Angeles and County of Los Angeles for street purposes, make sales of real property, cancel leases of real property, make payments upon the indebtedness of the bankrupt, compromise claims against the bankrupt, enter into agreements with the City of Long Beach, California, concerning rights to oil and gas produced under the Universal Consolidated Oil Company lease pending determination of title disputes to the property covered by the lease, renew contracts with the Oil Field Testing and Engineering Company, Inc., for checking of oil and gas production on said property, and to lease, pending sale, a barn belonging to the bankrupt estate for the storage of hay.

In the two tax years, of a total of $492,150.33 receipts from the trustee management, but $24,250.00, or less than six percent, came from the sale of real estate. Over $451,850.00 came from the leasing of the oil properties, collected in cash and oil bonuses and oil and gas royalties. Other income came from the leasing of miscellaneous properties.

■ The leasing of oil properties and the inspection of their operation and the collection of the various kinds of income therefrom constitute doing business of a

corporate nature. United States v. Trust No. B.I. 35, Etc., 9 Cir., 107 F.2d 22; Kettleman Hills R.S. No. 1 v. Commissioner, 9 Cir., 116 F.2d 382, certiorari denied 313 U.S. 582, 61 S.Ct. 1100, 85 L.Ed. 1538. These cases are distinguishable from In re Heller, Hirsh & Co., 2 Cir., 258 F. 208, wherein the trustee merely collected the proceeds of a claim he compromised arising from a contract made prior to the bankruptcy.

Clearly the trustee was "operating" the property of the corporation, and under orders of the court. It is immaterial that there was no general order to operate all the properties as a single business. It is what the trustee does which determines his tax liability. If there had been no order at all and he had operated the properties, he could no more escape tax liability on the ground that such action was illegal than any other lawbreaker can escape liability for the profits of his illegal enterprise. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020.

The trustee contends that even if this income was acquired by him in the operation of the bankrupt's property, it is not taxable because the trustee's ultimate objective was the liquidation of the entire estate. That is to say, he would have the pertinent sentence of Section 52 read "Except where the property of the estate is ultimately to be liquidated, * * * trustees in bankruptcy * * * operating the property * * * of corporations * * * shall make [income tax] returns," etc.

We can see no reason why in an act to raise revenue there should be imputed to Congress such an exception of the principal portion, indeed almost all of, the area of income producing activities in bankruptcy proceedings. When the trustee is operating the properties of a bankrupt corporation it is none the less such operation though of properties ultimately to be liquidated. Cf. Magruder v. Washington, etc., Realty Corp., 316 U.S. 69, 62 S.Ct. 922, 86 L.Ed. 1278.

We agree with the opinion of the Iowa Supreme Court in a receivership case in which liability under Section 52 of the Federal Act was adjudicated. The Court held,

"The receiver says he is a liquidating receiver. To liquidate in its general and usual sense means to assemble and mobilize the assets, settle with the creditors and debtors, and apportion the remaining assets, if any, among the stockholders or owners. [Citations].

\* \* \* \* \* \*

"In one sense this receivership is a liquidating receivership as the ultimate object is the liquidating of the company and it is true that the receiver was not operating the business as it was conducted by the corporation. On the other hand can it be said that he was not operating a part of the business, *that of investing the assets for the purpose of deriving revenue therefrom under the specific orders of this court. A fortiori* he was operating the property, within the meaning of the word as above defined, in taking possession of the assets, notes, bonds, and mortgages, collecting them, selling certain bonds and mortgages and reinvesting the proceeds in other bonds, mortgages and securities, in managing such real estate as the corporation owned or the receivership acquired, in leasing, repairing and collecting the rents and revenues therefrom. It seems to me that this receivership comes fairly within the phrase 'receiver operating the property or business,' *especially in connection with the words occurring later in the statute, 'of whose business or property they have custody and control.'*" State v. American Bonding & Cas. Co., 225 Iowa 638, 281 N.W. 172, 175.

The order is reversed.