# STANDARD OIL CO. OF LOUISIANA v. APEX OIL CORP. et al.—244 S. W. (2d) 176.

Middle Section.   June 29, 1951.

On Motion to Retax Costs August 3, 1951.

Petition for Certiorari denied by Supreme Court, December 14, 1951.

See also 190 Tenn. 376, 229 S. W. (2d) 775.

Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott, and Homer R. Miller, Special Assistants to Attorney General, Ward Hudgins, U. S. Attorney, A. O. Denning and Dick L. Johnson, Assistant U. S. Attorneys, all of Nashville, for appellant.

Armistead, Waller, Davis & Lansden, of Nashville, for appellees.

FELTS, J. This was a general creditors' suit against Apex Oil Corporation, a Tennessee corporation, engaged in the business of selling oil and gasoline, etc., at wholesale and retail. On March 27, 1940, J. C. Dale, Jr., was appointed Receiver of part of Apex's property consisting mainly of its stock of merchandise and accounts receivable. He liquidated these assets in 1940 except a few of the accounts which were uncollectible and were sold in 1944.

He also brought two suits in his name as Receiver for the benefit of the creditors and stockholders of Apex, to recover monies that had been wrongfully diverted from it by certain of its officers and directors acting with other corporations. In one of these suits, Dale v. Red Ace Petroleum Co. et al., there was a substantial recovery in 1946. In the other suit, decided January 16, 1948, there were recoveries of some $240,000, which were paid to the Receiver prior to September 30, 1948. See Dale v. Thomas H. Temple Co., 186 Tenn. 69, 208 S. W. (2d) 344.

The Commissioner of Internal Revenue claimed federal income taxes on certain parts of these recoveries and

assessed such taxes against Apex and the Receiver in the sum of $22,535.41 for the period January 1 to September 30, 1948. The Receiver, in his information returns, had taken the position that he owed no tax. The Collector of Internal Revenue filed a claim for such taxes in this suit. The Receiver filed objections to the claim. The matter was heard before the Special Chancellor, and he entered a final decree disallowing the claim.

The United States saved a bill of exceptions and appealed. It concedes the assessment was invalid in part. The amount it now claims is $8,760.28, with interest from December 15, 1948. It contends that the Receiver was "operating the property or business" of Apex, within the meaning of Section 52(a) of the Internal Revenue Code; and that he was therefore required to make a return and pay the income taxes for that corporation in the amount stated.

The facts are not in dispute. To secure its bonds in the sum of $210,000, Apex had mortgaged the properties and equipment it used in carrying on its business—all its real estate and all its personal property of every kind except the current stock of merchandise kept for sale in the ordinary course of business, its accounts receivable, and its leasehold estates. None of Apex's business, none of its properties covered by the mortgage, and none of its leasehold estates passed to the Receiver.

The decree appointing the Receiver authorized him to take charge of Apex's accounts receivable, its stock of merchandise, and all its other personal property except (1) that covered by the mortgage, (2) the leasehold estates, (3) proceeds of the sale of these two excepted classes, and (4) monies (several thousand dollars) seized by the sheriff under a levy; and to bring suit to recover on the accounts or any property belonging to Apex.

After excluding these four excepted classes, practically nothing was left but the stock of merchandise and accounts receivable.

The Receiver took charge of these items. All the rest of its property was sold by Apex. On March 28, 1940, Apex agreed to sell all the rest of its properties (the mortgaged properties and the leaseholds) to Lion Oil Refining Company, to transfer its privilege licenses to do business to Lion, and to *"continue to operate* its business as a going concern" (italics added) until the sale could be completed and the properties delivered to Lion. That was done in about 30 days, and Lion thus succeeded to Apex's properties and business and continued to operate the same.

The consideration for this sale was $165,000; none of it passed to the Receiver; part of it was used to pay state and federal taxes, and the rest went to the bondholders. Another item, besides the stock of merchandise and accounts receivable, that passed to the Receiver was shares of stock in a corporation running a parking lot. As holder of this stock he voted it to enable that corporation to continue its operation until he could sell these shares, which he did in about 60 days. On April 23, 1943, Apex's charter was revoked by the State of Tennessee for failure to pay taxes and make reports as required by law.

By 1944 the Receiver had completed the liquidation of all the tangible assets that had come into his hands. After 1944 his only activity was in connection with the two suits above mentioned. The Red Ace case was settled in 1946, and the Temple case decided in January, 1948. During 1948, the only period for which any tax is claimed, the Receiver did nothing but receive the funds in that case and disburse part of them under orders of the Chancery Court.

Section 52(a) of the Internal Revenue Code provides: "(a) Requirement. Every corporation subject to taxation under this chapter shall make a return * * *. In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control." 26 U. S. C. A. Sec. 52(a).

■ This is a re-enactment of prior acts without substantial change, and it has been considered by the courts in a number of cases. They generally agree that this provision applies only where the receiver, trustee in bankruptcy, or assignee is "operating the property or business" of the corporation, and that he is not doing that where he does nothing but liquidate the assets. Where he merely marshals and distributes the assets of the insolvent, there is no income and no income tax due under this section.

The earliest of these cases was In re Heller, Hirsh & Co., 2 Cir., 1919, 258 F. 208, 211. The bankrupt corporation had been engaged in business as a broker and had certain claims against two other corporations for commission or salary. These claims were compromised by payment of $119,275 to the trustee in bankruptcy. It was held that in thus reducing these choses in action to money to be distributed, the trustee was *not* " 'operating the property or business' " of the bankrupt and not liable for income taxes. It was there said:

" 'The language used in subdivision (c) shows that the subdivision was not intended by Congress to apply in the case of receivers or trustees in bankruptcy or assignees who merely marshaled and distributed the assets of an insolvent corporation among its creditors. In terms subdivision (c) applies only in cases where receivers or trustees in bankruptcy or assignees "are operating the property or business of corporations" and thus may be in the receipt of a "net income" as defined in the prior sections of the act. I regard the quoted words as of marked significance.

" 'To my mind the subdivision was inserted in the act to meet the specified case of the profitable operation of the business of a corporation by the officers mentioned; for instance, the operation of the business of a railroad corporation by receivers or the operation of the business of a manufacturing corporation by a trustee in bankruptcy, etc.' "

In re Owl Drug Co., D. C. Nev. 1937, 21 F. Supp. 907, 909, the bankrupt had been operating a chain of retail drugstores in several states. The trustee continued to operate the business until he could sell it as a going concern. He did sell the business and property prior to 1935 and deposited the proceeds in bank to await determination of the validity of the claims filed against the estate. For the year 1935 the deposits earned interest to the amount of $9,911.91. The Court held that the trustee was not liable for income taxes on such interest, because he was not "operating the property or business" of the bankrupt. The Court said:

"Here the operations of the trustee having terminated, and the income being derived not from operation but from interest on the money which the sale of the business and operative properties of the concern had brought,

the trustee had no taxable income. In requiring trustees in bankruptcy and other fiduciaries to make returns, the Congress has seen fit to limit the duty so imposed to the instances where they operate the property or business of the bankrupt. This is a specific limitation. We must give effect to it.''

In Doehler Die Casting Co., Inc., v. Meadows Mfg. Co., D. C. Ill. 1938, 23 Amer. Fed. Tax Rep., p. 1276, the receiver operated the corporation's business for two years and in April, 1934, sold the business and all the corporation's property except its accounts receivable and claims for royalties due upon patents. The receiver collected the accounts and the royalties and distributed the proceeds to the creditors in 1937. It was sought to hold him liable for income taxes on the sums he had collected during the years 1935, 1936, and 1937. The Court held that he was not ''operating the property or business'' and was not liable for any tax.

█ These federal decisions upon a federal statute are, of course, binding upon us and control the case before us. Apex's business and the bulk of its property passed not to the Receiver but to Lion, and Lion was substituted for it in the continued operation of the business and the property. During 1948, the tax year, the Receiver did not have custody or control of the property or business of Apex. He did nothing but await the decision in the Temple case, receive payment of the recoveries, and disburse part of the funds under the orders of the court. This, under these authorities, was not ''operating the property or business'' of the corporation.

It is argued for appellant, however, that these decisions are wrong and contrary to the administrative construction given by the Treasury Department to the word ''operating,'' in Section 52(a) and prior acts, as shown by

Treasury Regulations which have been in force since 1934. And a number of cases are cited in which receivers were held to be operating the properties of corporations. United States v. Chicago & E. I. Ry. Co., D. C. Ill. 1924, 298 F. 779, 783; State v. American Bonding & Cas. Co., 1938, 225 Iowa 638, 281 N. W. 172; Louisville Property Co. v. Com'r of Internal Revenue, 6 Cir., 1944, 140 F. (2d) 547; United States v. Metcalf, 9 Cir., 1942, 131 F. (2d) 677; Security First Nat. Bank v. United States, 9 Cir., 1946, 153 F. (2d) 563; Pinkerton v. United States, 7 Cir., 1948, 170 F. (2d) 846, 847.

None of those cases turned on any special construction of the word "operating." All of them were cases where the receivers were in fact operating the property of corporations, in the ordinary sense of the word. The receivers were managing and leasing properties, paying taxes and making repairs, collecting incomes and rents and royalties, investing funds or dealing in securities, or receiving incomes or interest or dividends or profits, or engaging in other similar business activities.

Those cases differed in their facts from the Heller and Owl cases, as some of them pointed out. But none of them, as we understand, disapproved or questioned the decisions in the Heller and Owl cases. In the last one, the Pinkerton case, supra, it was said: "We do not disagree with these decisions but, in the light of the instant facts, we do not think they are applicable here."

The regulation relied on as contrary to the decisions in the Heller, Owl, and Doehler cases is Section 29.52-2, Treasury Regulations 111. Under those decisions a receiver merely liquidating the assets is not operating the business or property. But under that regulation it would seem a receiver doing nothing but liquidating may be

held to be operating the property of a corporation. The pertinent parts of it are as follows:

"* * * If a receiver has full custody of and control over the business or property of a corporation, he shall be deemed to be operating such business or property within the meaning of Section 52, whether he is engaged in carrying on the business for which the corporation was organized or only in marshaling, selling, and disposing of its assets for purposes of liquidation. * * * A receiver in charge of only part of the property of a corporation, however, as, for example, a receiver in mortgage foreclosure proceedings involving merely a small portion of its property, need not make a return of income."

For appellant it is urged that this regulation has acquired the force of law because the statute which it interprets has been re-enacted without substantial change a number of times since 1934, when this regulation was first promulgated. On the contrary, the Receiver submits that the regulation is invalid because it contravenes the provisions of the statute, and that the judicial interpretation, rather than the administrative interpretation, furnishes the rule for decision in this case.

We need not undertake to resolve these matters. By its own terms, this regulation applies only where a receiver "has *full* custody of and control over the business or property of a corporation." If he is in charge of "*only part* of the property" he is not required to make a return or pay taxes for the corporation. Here, the Receiver never had full custody or control of the business or property of Apex. Its business and the bulk of its property passed to Lion, and Lion was substituted for it in operating the business and property. The Receiver was therefore not required to make a return or

pay income taxes for Apex. North American Oil Consolidated v. Burnett, 286 U. S. 417, 52 S. Ct. 613, 76 L. Ed. 1197.

■■ There is another objection to appellant's claim. The fund sought to be taxed in the Receiver's hands as income of Apex belongs not to Apex but to its creditors and stockholders. Its assets were a trust fund for them. Any of them could have maintained the Temple suit as a class suit and obtained the recoveries for himself and the others. Connecticut Mut. Life Insurance Co. v. Dunscomb, 108 Tenn. 724, 69 S. W. 349; Mechanics Bank & Trust Co. v. Knoxville S. & E. R. Co., 148 Tenn. 113, 251 S. W. 906. The revocation of Apex's charter ended its "existence as a legal corporate entity." Knoxville Truck Sales & Service, Inc. v. Commissioner, 10 T. C. 616, 620.

So if the fund be taxed as income of Apex and taxed again as income of the individuals, as no doubt it will be when each receives his pro rata part of it, the result will be double taxation, which is unjust and unwarranted in such a case as this. Cf. United States v. Cumberland Public Service Co., 338 U. S. 451, 70 S. Ct. 280, 94 L. Ed. 251.

The Chancellor's decree is affirmed. The costs are adjudged against appellant. The cause will be remanded to the Chancery Court for further proceedings not inconsistent with this opinion.

Howell and Hickerson, JJ., concur.

ON PETITION TO RETAX COSTS

The appellant, the United States, has moved to amend our opinion and judgment so as to vacate the taxation of costs against it, and in support of its motion cites Sec-

tion 2412(a) of Title 28, United States Code, which provides: "The United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress." See also: United States v. Worley, 281 U. S. 339, 344, 50 S. Ct. 291, 74 L. Ed. 887, 891; Walling v. Frank Adam Electric Co., 8 Cir., 163 F. (2d) 277, 283.

■ We find no Act authorizing taxation of costs against the United States in a case like the one before us. The motion is sustained. Our opinion and judgment are accordingly modified so as to eliminate the part of them taxing the costs against appellant.

Howell and Hickerson, JJ., concur.