**In the Matter of STATMASTER CORPORATION, Bankrupt.**

**No. 67–219–Bk–CA.**

United States District Court,
S. D. Florida,
Miami Division.

May 27, 1971.

Robert Paul, Miami, Fla., for trustee.

Robert W. Rust, U. S. Atty., Vincent K. Antle, Asst. U. S. Atty., Miami, Fla., for petitioner.

## MEMORANDUM OPINION*

ATKINS, District Judge.

This matter comes before the Court on a petition for a review of the Referee's lengthy and detailed order determining that the bankruptcy court had jurisdiction over a petition filed by the trustee requiring the United States of America to appear and show cause and deciding on the merits that the trustee was not subject to corporate income taxes on interest income.

The facts are not in dispute. On May 12, 1967 a voluntary bankruptcy petition was filed by Statmaster Corporation, and it was duly adjudicated bankrupt. Subsequently, a trustee was appointed for the bankrupt corporation. The trustee was not authorized to operate the business of the bankrupt and did not do so, but proceeded to liquidate its assets. In the course of the administration of the estate, the trustee petitioned for leave to deposit funds at interest in a time deposit bank account. This action was authorized in an order entered by the Referee. As a result of the placing of funds of the estate in a time deposit bank account, interest in the amount of $5,500.57 was earned by the trustee.

On November 5, 1970 the trustee filed a petition for an order to show cause.

---

* In lieu of findings of fact and conclusions of law. Rule 52, Federal Rules of Civil Procedure.

Attached to the petition was an Internal Revenue Service form 1120, corporation income tax return for Statmaster Corporation signed by Larry Gilbert, trustee in bankruptcy. This document purported to be a return for the period from January 1, 1968 to October 23, 1970. The purported corporation income tax return showed income from interest of $5,500.57, deductions in excess of that amount and no tax due.

In the petition filed by the trustee, it was prayed that an order be entered directing the United States to show cause why, upon the filing of the corporation income tax return attached to the petition, the trustee should not be relieved and discharged of any and all liability for internal revenue taxes in connection with his administration of the estate. An order to show cause directed to the United States was entered on November 9, 1970, and the matter was set down for a hearing.

The trustee has not filed corporation income tax returns for Statmaster Corporation with the Internal Revenue Service and there has been no opportunity for an audit. However, no claim has been asserted in this proceeding by or on behalf of the United States for corporation income taxes and no claim for taxes has been made or even threatened against the trustee.

The United States opposed the trustee's petition on jurisdictional grounds. However, the Referee decided that he had jurisdiction to grant the relief prayed for in the petition. On the merits of the petition, the Referee determined that since the trustee did not operate the property or business of the bankrupt, the interest income received by him in his fiduciary capacity was not subject to federal income tax and further that the law did not require the trustee to file corporation income tax returns for the bankrupt corporation.

In support of its petition for review, the United States contends that the bankruptcy court lacks jurisdiction to grant the relief prayed for in the petition. The Government also asserts that the law requires a liquidating as well as an operating trustee to file corporation income tax returns for the bankrupt and to pay any tax that is due.

The first contention of the United States is that the trustee seeks a declaratory judgment as to federal taxes, prohibited by Title 28 U.S.C. § 2201. It urges that In re Wingreen Co., 412 F.2d 1048 (5 Cir. 1969) is controlling.

■ It is uncontroverted that the bankruptcy court has the power to adjudicate tax controversies that come before it. Title 26 U.S.C., Section 6871 (b). Furthermore, the trustee points out that this power extends to the validity and amount of taxes accruing during a bankruptcy proceeding, citing 9 Mertens, Law of Federal Income Taxation, Sec. 54.03, footnote 10. The difficulty with the trustee's position is that in the instant case there is merely a prospective or potential tax controversy. As of this time, no tax deficiency has been asserted by the Commissioner. The trustee, by his petition, seeks protection against the possibility that at some future date an income tax deficiency may be asserted against him, at which time he may have disbursed all of the funds to creditors of the estate.

The trustee seeks to distinguish *In Wingreen Co., supra,* on its facts, pointing out that the trustee in that proceeding under Chapter X sought to require the District Director of Internal Revenue to make an audit to establish a loss carry forward claim, thereby increasing the value of the business. Although it is conceded no such affirmative action is required of the Internal Revenue Service in the instant case, the Court is of the view that this is a distinction without a difference. In the instant case, as in *Wingreen,* there is a "largely hypothetical and premature" tax question.

■ Inasmuch as the Court finds that *Wingreen* is controlling and the bankruptcy court lacks jurisdiction over the subject matter of the trustee's petition

by reason of Title 28 U.S.C., Section 2201, prohibiting a declaratory judgment as to federal taxes, it is not necessary to consider either the question of sovereign immunity or the duty of the trustee in bankruptcy to file income tax returns for the corporation. The Court does, however, take note of the troublesome problems in the administration of bankruptcy which are raised and discussed in the Referee's thoughtful opinion. While the temptation to do otherwise is surely great, the resolution of these problems must be left to Congress.

The petition for review is granted, the Referee's decision is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

## OPINION OF REFEREE IN BANKRUPTCY

This case is before the Court upon a question as to whether a trustee in bankruptcy must report and pay federal income tax on interest earned upon his deposits of estate funds pending the final liquidation and distribution of the estate.

The question as presented is deceptively simple inasmuch as it covers a number of subsidiary procedural questions which are of equal importance to effective bankruptcy administration under the National Bankruptcy Act, as balanced with the importance of the substantive tax question to the interpretation of that Act and the Internal Revenue Code. To some extent it may fairly be stated that this case involves a possible conflict between the provisions and policies underlying these co-equal statutes enacted by Congress. As such, it deserves a more detailed examination and discussion than would otherwise be justified. The objective must be to resolve any apparent conflict in a fashion which will preserve to the fullest extent possible the intended purposes of the provisions of both statutes.

It is for the foregoing reasons, and also because the issue involved will necessarily delay the closing of every bankruptcy estate until it is resolved, that the Court feels constrained not only to go into the question in depth but also to decide the matter in a way that will result in a prompt, complete determination notwithstanding the somewhat narrower framing of the issues by the parties in the pleadings in this case.

## THE PROCEDURAL QUESTION

This case was brought before the Court by a Petition for Order to Show Cause filed by the trustee in bankruptcy reciting that he had completed the liquidation of the estate; that during the course of his administration he had deposited estate funds at interest and those deposits had earned a total of $5,500.57 of such interest; and that final distribution to creditors could not be made until the question of the trustee's obligation, if any, for federal income taxes on this interest was finally adjudicated.

Accordingly, the trustee attached to his Petition a Form 1120 "United States Corporation Income Tax Return" which he proposed to file with the Internal Revenue Service reflecting no income tax to be due on such interest "income" because of certain administrative expenses and other distributions which he apparently feels would wipe out any tax liability.

An Order to Show Cause was entered, pursuant to the trustee's Petition, directing the United States of America to show cause why the trustee should not be authorized to file the tax return attached to his Petition, and why upon filing the same an order should not be entered by this Court "relieving and discharging said trustee from any and all liability for internal revenue service taxes arising from the receipt of interest from interest bearing accounts".

The United States responded with an Opposition to Order to Show Cause, which opposes the relief requested upon the following grounds:

(1) The declaratory relief which the Trustee for the Bankrupt seeks is

barred by Title 28, U.S.C. Section 2201.

(2) This Court lacks jurisdiction over the subject matter of the Application For Order To Show Cause.

(3) The Application For Order To Show Cause fails to state a claim upon which relief can be granted.

Hearing was had on the Order to Show Cause, and the Opposition thereto, and counsel have subsequently filed their respective memoranda of law.

After full consideration and extensive research, the Court is of the opinion that while the United States may have substantial grounds for objecting to the relief in the precise form in which it was demanded, the pleadings do raise an actual controversy which this Court has jurisdiction to resolve directly without resort to any indirect methods which create complicated and unnecessary issues of declaratory relief, subject matter jurisdiction, and failure-to-state-a-claim problems.

The Bankruptcy Court, as the Court charged with the judicial administration of the bankruptcy estate before it, has inherent power to determine any and all *administrative* liabilities of its fiduciary, i. e. the trustee in bankruptcy, before it directs that fiduciary to make his final distribution of estate funds and discharges the fiduciary from his bond. Mertens, Law of Federal Income Taxation, §§ 25.58, 47.32, 54.03 and 54.05; 3 Collier on Bankruptcy, § 62.14(3) fn. 42; McColgan v. Maier Brewing Co., 134 F.2d 385 (9th Cir. 1943).

Of the authorities cited above, the Mertens tax treatise states the proposition directly as follows:

> The validity and amount of taxes which accrue during a bankruptcy proceeding are also to be determined by the (bankruptcy) Court. * * * This plenary power is given because of the intention of the Bankruptcy Act that estates shall be promptly wound up and because the ordinary processes of tax adjustment might fail sufficiently to expedite the determination of tax liability.

> (Mertens, § 54.03, fn. 10)

The *McColgan* case, although it involved state taxes, is directly analogous in that it held that the taxing authority was precluded from asserting a tax claim against the federal bankruptcy receiver personally, or against the assets involved, where the question of any administrative tax liability was raised and resolved in the bankruptcy court prior to discharge of the receiver and distribution of the assets. The Court of Appeals made the following observation in reaching this decision:

> As much now as in the past orderly procedure requires that administrative expenses be settled while the property yet remains in the custody of the court. (134 F.2d at p. 388)

That even tax specialists recognize this inherent power of a court administering an estate to determine administrative liabilities against the estate is reflected in the following comment by Shapiro in his article, "Tax Effects of Bankruptcy", Univ. of So. Calif. 11th Institute on Federal Taxes (1959), page 587:

> If, to the tax lawyer, it appears at times that strange results stem from tax cases arising in bankruptcy, it should be remembered that this is caused by the necessity to reconcile the theme of the Bankruptcy Act with that of the Internal Revenue Code. Tax law is fundamentally a cold application of the statutory enactment contained in the Internal Revenue Code whereas in the final analysis, the design of Congress in fashioning our bankruptcy law has been equality of treatment among creditor groups through the application of equitable principles while granting an honest bankrupt relief from his debts. (Article cited, p. 605)

Finally, aside from any questions of inherent power, it should be noted that Section 62(a) of the Bankruptcy Act expressly provides authorization for the

Bankruptcy Court to pass upon administrative costs incurred by receivers and trustees; and Section 2(a) (15) provides general jurisdiction to make such orders "as may be necessary for the enforcement of the provisions of this Act". In the present case, there can be no dispute about the need for relief in this Court, in view of the problems of delay of final distribution of the assets of the estate—if the tax liability question were left to the ordinary administrative procedures of the Internal Revenue Service—of a minimum of three years, and a possible overall period of six years. (See Transcript of Hearing, Court Paper 278). The trustee is caught in a dilemma. If he files a tax return showing no tax due and distributes all the assets on the assumption that his return will not be challenged, he would run the risk of an Internal Revenue Service disapproval of his return, within the three years permitted by the Code, and a resulting claim for deficiency against himself after he had divested himself of the assets which could cover such liability. If he files the return but holds up distribution of the estate pending the three year statute of limitations, to protect himself, he denies creditors the speedy liquidation and distribution the Bankruptcy Act contemplates. If he holds back just enough to cover the possible tax liability, he can distribute most of the estate promptly to creditors but he would have to hold the case open for at least three more years; and then if the tax return was not challenged he would have a relatively small amount in most cases to distribute pro-rata to numerous creditors. In these circumstances, the Court concludes there is ample justification for relief directly in the bankruptcy proceeding.

Accordingly, the Court considers properly before it for determination the substantive issue of whether the trustee owes any federal income tax, as an administrative liability, by virtue of the interest earned upon the deposit of the estate funds. The Court concludes further that the trustee can raise this issue directly in this Court without the neces-

sity for filing a tax return with the Internal Revenue Service. Viewed in this light, the various jurisdictional objections raised by the United States in its responsive pleading are not applicable. Moreover, the recent decision in the case of In re Wingreen Company, 412 F.2d 1048 (5th Cir. 1969), is likewise inapplicable, inasmuch as that case involved an attempt at declaratory and mandamus relief to a tax question which the Court of Appeals found was largely hypothetical and premature. (See 412 F.2d at p. 1051). The present case, on the contrary, involves a concrete, actual tax question concerning the liability of the trustee in bankruptcy for a possible administrative expense which must be resolved before this estate's liquidation can be completed under the provisions of the Bankruptcy Act.

## THE SUBSTANTIVE QUESTION

Research has revealed only one case which has ever decided the question here at issue. In the case of In re Owl Drug Co., 21 F.Supp. 907 (D.C.Nev.1937), it was held that a trustee who is merely liquidating a bankruptcy estate, and is not operating the bankrupt's business, is not liable for federal income tax upon interest earned upon his deposits of the estate funds. Accordingly, were the internal revenue statutes applicable at the time of *Owl Drug* directly comparable to those in effect at present, there would be little need for further discussion. The trustee in the present case was likewise not engaged in operating the business of the bankrupt corporation.

The Court in the *Owl Drug* case referred to the following provisions of section 52 of the Revenue Act of 1934 (26 U.S.C.A. § 52):

In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business of corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to

make returns. Any tax due on the basis of such returns made by receivers, trustees, or assignees shall be collected in the same manner as if collected from the corporations of whose business or property they have custody and control.

This same language appeared in section 52(a) of the Internal Revenue Code of 1939, until it was supplanted by the Internal Revenue Code of 1954. It should be noted that this language provides for tax returns to be filed by trustees operating the business of bankrupt corporations *and also* imposes a tax liability upon such trustees to be collected in the same manner as if collected from the corporations whose businesses are being operated.

The cases were uniform prior to 1954 in using the "operating" test to determine whether a trustee in bankruptcy had to pay tax on any income earned during his administration of the bankruptcy estate. In re Heller, Hirsh & Co., 258 F. 208 (2nd Cir. 1919); United States v. Chicago & E. I. Ry. Co., 298 F. 779 (N.D.Ill.1924); In re Owl Drug, supra; Doehler Co. v. Meadows Mfg. Co., 23 AFTR 1276 (S.D.Ill.1938); State v. American Bonding & Casualty Co., 225 Iowa 638, 281 N.W. 172 (1938); United States v. Metcalf, 131 F.2d 677 (9th Cir. 1942); Louisville Prop. Co. v. Commissioner of Internal Revenue, 140 F.2d 547 (6th Cir. 1944); Pinkerton v.

United States, 170 F.2d 846 (7th Cir. 1948). All of these cases employed the word "operating" in its ordinary sense of carrying on the type of business the bankrupt was organized for and conducted prior to bankruptcy. Moreover, these results were reached notwithstanding the existence from 1934 of § 29.52–2 of Treasury Regulation 111, by which the Treasury sought to define "operating" in the statute in a very broad manner to include the liquidation function of a trustee in bankruptcy.[1] See discussion in Standard Oil Co. v. Apex Oil Corp., 35 Tenn.App. 225, 244 S.W.2d 176, at pp. 179–181 (1951), which also includes a good summarization of the well-established state of the law as of that time holding a non-operating trustee free from federal income tax liability.

This brings us to the question of whether the ruling in the *Owl Drug* case, and the other cases cited above, have any continuing force under the revised provisions of the Internal Revenue Code of 1954. A quick reading of § 6012(b)(3) of that Code would suggest that they do not. See *Feigenbaum*, "Observations Concerning Trustees in Bankruptcy and Federal Income Taxes", 43 Referee's Journal, 73, 74–75 (July 1969). However, when one delves into the legislative history, the statutory context of the new provision, and the background of settled interpretation of the prior law,[2] the conclusion is not so simple.

---

1. The Regulation is quoted in full in the case of Town Crier Bottling Co., D.C., 123 F.Supp. 588, where the court declined to follow it, holding that as applied to a trustee in bankruptcy it was in conflict with the statute. The pertinent portion of the Regulation reads as follows: "If a receiver has full custody and control over the business or property of a corporation, he shall be deemed to be operating such business or property within the meaning of section 52, whether he is engaged in carrying on the business for which the corporation was organized or only in marshalling, selling, and disposing of its assets for the purposes of liquidation".

2. While Feigenbaum refers to a "substantial controversy" on the point prior to the

1954 Code, none of the cases he cites, nor any others uncovered by research, had ever held a trustee liable for tax on pure liquidating income which did not involve operation of the business. The only "controversy" was by virtue of the IRS's own regulation, of which Feigenbaum admits the "IRS was by no means uniformly successful although consistently maintaining the position that 'operating' includes 'liquidating'". In fact, as indicated above, the IRS was *never* successful prior to 1954 in getting *any* court to accept this position with regard to trustees of corporate bankrupts under § 52(a) or its interpretative regulation. Feigenbaum does cite three cases construing other statutory provisions which might by analogy be argued to sup-

Section 6012(b) (3), as enacted by the 1954 Code, provides as follows:

> In a case where a receiver, trustee in bankruptcy, or assignee, by order of a court of competent jurisdiction, by operation of law or otherwise, has possession of or holds title to all or substantially all of the property or business of a corporation, whether or not such property or business is being operated, such receiver, trustee, or assignee shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns.

It should be noted that the phrase "whether or not such property or business is being operated" is now found in the statute. It should also be noted that the new statute does not expressly provide for collection of the tax from the trustee, as did the prior provision in the 1939 Code. Finally, it is worthy of notice that this section is part of "Subtitle F—Procedure and Administration" of the Code, and that the key operative words of the section are that the trustee of a bankrupt corporation "shall make the return of income *for such corporation*". (Emphasis supplied).

The Internal Revenue Code of 1954 was a wholesale revision of the tax laws. There are voluminous committee reports which give considerable detail as to the various substantive changes, and the reasons therefor, being made by the new Code. These committee reports make up the bulk of Volume 3, U.S.Code Congressional and Administrative News, 83rd Congress, 1954. However, the *entire* reference in both the House and Senate Committee Reports to the

changes being made by § 6012 of the new Code is as follows:

> Subsection (a) (1) of this section differs from existing law in that it provides that any taxpayer who has attained the age of 65 before the close of his taxable year shall be required to make a return only if he has for the taxable year a gross income of $1,200 or more. As under existing law, all other individuals are required to file income-tax returns if they have gross income of $600 or more for the taxable year.
>
> Subsection (a) (4) of this section conforms the filing requirement for trusts to the new exemption of $300 granted certain trusts under subtitle A. A clarifying change from the wording of existing law has been made in subsection (b) (3), relating to the filing of corporation returns by receivers or other fiduciaries. U.S.Code Cong. & Admin.News 1954, pp. 4543, 5211.

Thus, it is apparent that the only Committee Report reference to the statutory change here in question was the brief concluding sentence: "A clarifying change from the wording of existing law has been made in subsection (b) (3), relating to the filing of corporation returns by receivers or other fiduciaries."

The first case to consider the effect of the 1954 enactment of § 6012(b) (3) was United States v. Sampsell, 266 F.2d 631 (9th Cir. 1959). A more inappropriate case for this particular issue to have its first airing could hardly be imagined. An understanding of the 1959 opinion of the Court of Appeals for the Ninth Circuit should start with the fact that they were dealing with a bankruptcy proceed-

---

port imposition of tax on a non-operating trustee: In re Mid-American Co., D.C., 31 F.Supp. 601; Missouri v. Gleick, 8 Cir., 135 F.2d 134; and In re Loehr, D. C., 98 F.Supp. 402. However, the first two involve state unemployment taxes for trustee's employees where the exact nature of trustee's "liquidation" operation is not

made clear; and the third case not only involves an individual bankrupt—not covered by either § 52(a) or § 6012—but also involved a real estate "liquidation" of a bankrupt previously engaged in selling real estate. (See discussion of Sampsell opinion, infra, for a similar situation.)

ing which began in 1935 and which had already produced the following reported decisions:

1942—United States v. Metcalf
131 F.2d 677

1954—In re F. P. Newport Corp.
123 F.Supp. 95

1954—F. P. Newport Corp. v. Sampsell
216 F.2d 344

1955—United States v. Sampsell
224 F.2d 721

1956—In re F. P. Newport Corp., D.C.
144 F.Supp. 507

Numerous additional, unreported decisions are referred to in the published opinions.

The bankruptcy began with an involuntary petition filed on March 19, 1935. (123 F.Supp. at p. 96). The bankrupt was a realty company. Its assets consisted primarily of various parcels of real estate, both improved and unimproved, ninety percent of which were encumbered by a mortgage held by a Los Angeles bank. (131 F.2d at p. 678). The trustee was authorized by the court to sell off parcels at agreed release prices, with a division of proceeds as agreed upon by the trustee and the bank. This procedure went on for 19 years, in what supposedly was a straight bankruptcy proceeding. The bankrupt, who remained active in the case throughout, apparently had convinced the court and the creditors that everyone could eventually be paid in full and leave something for the bankrupt too. (123 F.Supp. at pp. 96–97).

Sometime prior to 1942, oil and gas was discovered underlying property adjacent to certain parcels held by the trustee. In order to avoid a "drain off" of any gas and oil under the bankruptcy property, the trustee was authorized to enter into oil and gas leases on the estate property. He conducted various business activities in conjunction with these leases and other portions of his realty holdings, and received considerable revenues. (131 F.2d at p. 678).

Things progressed to the point that in 1954 the trustee consummated a final sale which brought the total assets of the estate to a sum sufficient to pay all unsecured creditors in full, including a surplus to pay interest on such claims. (123 F.Supp. at p. 99). The occasion for the 1954 decision involving this matter was an objection by the bankrupt that the final sale was at an insufficient price and that interest should not be allowed. Apparently, this procedure would result in nothing left for the bankrupt. The contentions of the bankrupt were overruled, and the decision later became final on appeal. (216 F.2d 345).

The question of the taxability of the trustee's activities in the *Newport* bankruptcy proceeding was first raised in the 1942 decision. The district court held that since the trustee was engaged in a liquidation of the bankrupt's assets, albeit a rather protracted one, he was ipso facto a "non-operating" trustee and hence not liable for federal taxes under § 52(a) of the 1939 Code. The Court of Appeals reversed on the ground that it was what the trustee was actually doing that controlled his tax liability. (131 F.2d at p. 679). They ruled that his activities were so close to the ordinary operation of the bankrupt's business that it could not be said that he was not "operating" the business. The fact that the ultimate objective was liquidation was deemed not to be controlling.

The *Newport* trustee did in fact pay income taxes on an operating basis from 1942 to 1952. In the latter year, however, the district court apparently decided it was time to bring the case to a close. An order was entered on May 26, 1952 directing the trustee to sell the remaining assets "at private or public auction" and close the estate. (224 F.2d at p. 722). Based on this order, the trustee took the position that he incurred no federal taxes for the 1952 tax year, after the date of the order, because he was now strictly "liquidating" and not operating. The referee and this district court agreed, but the Court of Appeals reversed on the ground that the order by itself would not govern, and that

there were insufficient facts in the record to determine the actual scope of the trustee's activities from 1952 on. (224 F.2d at p. 722). Accordingly, the case was remanded for further hearings.

We now come to the stage of the last rulings in the long history of the *Newport* litigation. On remand, it was developed that the trustee's receipts after the 1952 order came from monthly royalties on the gas and oil leases, sale of three parcels of realty by special order, and sale of all the remaining assets in bulk to one buyer. The referee and the district court again concluded that this factually did not amount to conducting the business of the bankrupt. (It should be noted in passing that the district court again tended to discuss the matter in the abstract, ignoring the obvious and peculiar fact that in this particular case selling real estate *was* precisely the business the bankrupt had been engaged in.) The district court also made reference to § 6012(b) (3) of the 1954 Code, since the 1954 and possibly the 1955 tax years were involved by this time. (144 F. Supp. at p. 509). The district judge concluded that § 6012(b) (3) did *not* change the result, basing his conclusion partially upon the fact the Congress had not undertaken to change the provisions of 28 U.S.C. § 960 which then (and still) provides:

> "Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

The district judge expressed his conclusion in this regard as follows:

> I cannot believe that the Congress of the United States, by requiring in the 1954 Act, a trustee in bankruptcy to make a return, *whether he is operating the business or not,* intended to

charge him with liability for income taxes for purely liquidating activities. The legislative history does not indicate that it was the intention of the Congress to introduce so significant departure from precedent. See 83rd Cong. 2d Sess.S.Rep. 1622 (1954) p. 562. Had it intended to do so, it certainly would have amended Section 960 of the Judicial Code which *imposes* the obligation to pay.

> \*    \*    \*    \*    \*    \*

> Historically, income taxes are levied on the *profits of the owners of a successful enterprise,* not on the dividends paid to the creditors on the "winding-up" and "closing-out" of a defaulted and bankrupt business. (144 F.Supp. at pp. 509–510)

Accordingly, the district court affirmed the referee's order disallowing federal income taxes for the years 1952, 1953, 1954 and 1955.[3]

The Court of Appeals for the Ninth Circuit heard the appeal from the foregoing order in 1959 and reversed, in the decision cited at the outset, United States v. Sampsell, 266 F.2d 631. The major portion of the opinion, as did the prior one in 1955, deals simply with the question of whether the trustee was or was not operating the business after the 1952 "liquidation" order. The Court of Appeals held that he was, in view of the scope of his activities and the nature of the bankrupt:

> The bankrupt was a real estate corporation, and the sale of property by it could be considered as part of its normal operations as well as a liquidation. It is not the same as the selling of the tools or equipment of production by a manufacturing company, or as the sale of trucks used in distributing produced merchandise.

> The Trustee paid tax on his income until May 26, 1952. He has not shown any change of conduct or operation

---

3. It should also be noted that the reason these tax questions were before the bankruptcy court was pursuant to an order directing the filing of administrative tax claims by the IRS within a certain date. There apparently was no challenge to this procedure.

occurring after the order of liquidation during the years 1952 and 1953. (266 F.2d at pp. 633–634)

As for the 1954 and 1955 tax years, the Court of Appeals chose to reject the district court's interpretation of § 6012 (b) (3), although the issue was really unnecessary to decide in view of their conclusion that the trustee was operating the bankrupt's business—a conclusion that would subject him to tax liability in any event.

In reference to § 6012(b) (3), the *Sampsell* opinion comments as follows:

Under the view of the lower court, the failure of Congress to amend Section 960 indicates an intent to retain the old distinction between an operating trustee and a non-operating one of Section 52 and an intent not to make any great change.

We do not agree. In the first place, the change would not be a great departure from the past because of the broad interpretation given to the phrase "operating the property or business" by both the courts and the Treasury Regulations. But, more important, Section 960 is an affirmation of tax liability and "does not exclude liability for taxes otherwise validly imposed." *Brown v. Collector of Taxes for District of Columbia*, 101 U.S.App.D.C. 200, 247 F.2d 786. (266 F.2d at p. 635)

It should be noted here that the specific treasury regulation under § 52(a) of the 1939 Code had, as we have seen above, consistently *not* been followed by the courts. Moreover, the only broadening of any kind done by the actual case decisions was to hold a trustee liable for tax where his "liquidation" was of the same nature as the business operation of the particular bankrupt involved. See *State v. American Bonding & Casualty Co.*, cited above, which was also the principal case relied upon by the Ninth Circuit in its 1942 opinion at the outset of *Newport* saga. (131 F.2d at p. 679).

The foregoing extended discussion of the long series of decisions in the case

of the *F. P. Newport Corp.* bankruptcy, culminating in the 1959 *Sampsell* opinion, was not undertaken to challenge or question the result there reached. After all, that bankruptcy started in 1935, involved operations of considerable magnitude over a long period of years, and ended with the prospect of paying everyone off in full. It was a unique case, and deserved the imposition of tax on what was in every sense an "operation" of the particular real estate business involved. The real point of the foregoing analysis is to reach the conclusion, which hopefully flows from it, that the *Sampsell* opinion is not a weighty precedent insofar as its comments about the effect of § 6012(b) (3) of the 1954 Code are concerned.

The conclusion that the proper interpretation of the effect of § 6012(b) (3) is still open, notwithstanding the concluding comments in the *Sampsell* opinion, is reinforced and confirmed by certain passages in Nicholas v. United States, 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). This case dealt with the question of whether a trustee in bankruptcy succeeding a debtor-in-possession in an unsuccessful Chapter XI proceeding was liable for interest and penalties on federal taxes incurred but unpaid by the debtor-in-possession. However, in the course of its decision the Supreme Court took occasion to make the following comment:

Nor is there any issue raised in this case concerning the susceptibility to tax under 28 U.S.C. § 960 of a trustee whose activities do not amount to the conduct of business in any meaningful sense. See United States v. Sampsell, 266 F.2d 631 (C.A.9th Cir) ; In re Loehr, 98 F.Supp. 402 (D.C.E.D. Wis.) ; In the Matter of F. P. Newport Corp., Ltd., 144 F.Supp. 507 (D.C. S.D.Cal.). (384 U.S. at p. 693, fn. 28, 86 S.Ct. at p. 1685)

The interesting thing of course is the citation of *both* the lower court and the appellate court opinions in the *Newport* litigation. The Supreme Court obviously wished to leave open the meaning and

effect of 28 U.S.C. § 960 in conjunction with a non-operating trustee in bankruptcy.

This brings us finally to confront the crucial issue in the present case: Must a non-operating trustee in bankruptcy report and pay income tax upon receipts such as the interest on deposits here involved which result solely from his liquidation function? Stated in statutory terms, the question is precisely what is the meaning of the language in § 6012(b)(3) that a trustee of a corporate bankrupt "shall make the return of income for such corporation"? The question must be considered in terms of the context of the section in the Internal Revenue Code, the effect of the unchanged provisions of 28 U.S.C. § 960, and the applicable provisions of the Bankruptcy Act relating to trustees and corporate bankrupts.

An immediate conceptual problem arises with the language used by the drafters of the 1954 Code provision. A trustee in bankruptcy of a corporate bankrupt simply does not own or control the *corporation* involved—he is vested only with title to its assets. In re Town Crier Bottling Co., 123 F.Supp. 588 (E.D.Mo. Dec. 23, 1953, Order confirmed April 16, 1954). What does it mean to say that he will file the return of income "for such corporation"? As to the period prior to bankruptcy, he obviously has no personal knowledge of corporate affairs. As to the post-bankruptcy period, the corporation has a right to apply for discharge under Section 6 of the Bankruptcy Act and proceed independently thereafter. While the discharge is not applied for in the majority of corporate bankruptcies, it does occur, and the statutory language now in § 6012(b)(3) completely ignores these provisions of the Bankruptcy Act.

The prior provision of § 52(a) of the 1939 Code encountered no such conceptual difficulties because, by definition, trustees "operating the property or business of corporations" would necessarily relegate the "shell" corporations to an entirely inactive role. There could be no conflict between two co-existing tax entities "operating" at the same time in the same name. The provisions of 28 U.S.C. § 960, on the other hand, have always avoided any such conceptual difficulty by straightforward language to the effect that it is "any officers and agents conducting any business" who are subjected to the tax. Moreover, it has been consistently held from the time of the earliest income tax statute that the tax imposed on a trustee operating a business is a tax imposed on the *trustee* and not on the corporation. In re Town Crier, supra; Reinecke v. Gardner, 277 U.S. 239, 48 S.Ct. 472, 72 L.Ed. 866 (1928).

The reason for the conceptual problem in § 6012(b)(3) becomes apparent when we note that its structure and language closely parallel the provisions of Treasury Regulation 111, § 29.52–2, in its crucial portions.[4] This was the regulation, as indicated above, which attempted to define "operating" to include "liquidation", and which was expressly held to be void and unenforceable in this regard in In re Town Crier Bottling Co., supra. As is pointed out in the excellent discussion of the entire legislative and judicial history (from 1913 to 1953) of the subject in the *Town Crier* opinion, the regulation in question was entirely inconsistent with that history and the statutory provisions. Now, by virtue of § 6012(b)(3), the provisions of the regulation have purportedly "become the law". However, as we have seen from the committee reports, Congress was not advised of any such sweeping substantive change by the enactment of § 6012(b)(3). Moreover, none of the changes in other provisions of the Code, in the Bankruptcy Act, or in 28 U.S.C. § 960, which might be expected to be made to accompany such a sweeping substantive change were made. See discussion of myriad of unresolved questions of deductions, procedure, etc., in the *Feigenbaum* article cited above; and also in *Krause and Kapiloff*, "The Bank-

4. See footnote 1 on page 1253.

rupt Estate, Taxable Income and the Trustee in Bankruptcy", 34 Fordham Law Review 401 (1966).

Aside from conceptual problems, there are some very practical, difficult administrative problems, reflected in the hearing in this case, which would affect the handling of bankruptcy estates if a trustee were required to file returns and pay taxes for "income" realized from liquidating activities. Bankruptcy is supposed to be an expeditious procedure. In its *Nicholas* opinion, the Supreme Court referred to "the considerations of equity and administrative convenience established by our decisions under the Bankruptcy Act". (384 U.S. at p. 690, 86 S.Ct. at p. 1683). While the interest involved in the present case is sizeable, there are many small estates in which deposits at interest may be deterred if the trustees are subjected to the burden of filing returns and trying to determine what deductions may be authorized under the various uncertainties reflected in the articles cited above. The simple fact is that the deduction provisions of the Internal Revenue Code do not contemplate or provide for the "liquidating trustee" situation.

It is also important to note that § 6012 (b) (3), read in its broadest scope, would apparently require a trustee in *all* corporate bankruptcies to file the corporate tax return for the tax year in progress at the time of the bankruptcy petition. This would mean that the trustee, with no personal knowledge of the facts, would have to sign and certify the return. Moreover, in the increasing number of cases with marginal or fully encumbered assets—or even when there were *no* liquid assets—he purportedly would be required to prepare and file the return notwithstanding the lack of funds to employ the necessary bookkeepers or accountants. See Krause and Kapiloff, article cited, pp. 401–406; In

re Town Crier, supra. A failure to perform this duty, if it is required, could result in personal liability for the trustee. 31 U.S.C. § 192. There are also civil and criminal penalties as worrisome possibilities. *Krause,* supra, p. 404. It is no answer to say, as is probably true in most districts, that the IRS District Directors do not necessarily press for the filing of the last corporate tax return by the trustee where the business obviously had no net taxable income at the time of bankruptcy. If § 6012(b) (3) is broadly construed, the uncertainty about what a trustee should do exists, with overtones of civil and criminal sanctions, and such a situation can not help but dissuade otherwise qualified trustees from accepting appointments in marginal cases. It is significant in this regard also to refer to the *Nicholas* opinion, where the Supreme Court took pains to negate any implication that its decision extended to the filing of tax returns by the trustee for pre-petition periods.[5]

## CONCLUSION

Having considered at length the relevant legislative and judicial materials, the Court must come to a conclusion as to the scope and effect of the language in § 6012(b) (3) stating that a non-operating trustee of a corporate bankrupt "shall make the return of income for such corporation".

The basic principles of statutory construction pertaining to tax matters are well set forth in *Murtagh,* "The Role of the Courts in the Interpretation of the Internal Revenue Code", 24 The Tax Lawyer 523 (Spring 1971). The most important one for purposes of the present case is the principle that taxes, being a burden upon the public, will not be extended by implication or by indirection. As stated by the Supreme Court

---

5. "Thus, nothing said in this opinion may be taken as imposing any obligation upon a trustee in bankruptcy to file returns for taxes incurred before the initia-

tion of proceedings under the Act." (384 U.S. at p. 693, fn. 27, 86 S.Ct. at p. 1685).

in Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211 (1917):

> In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor of the citizen.

And again in Reinecke v. Gardner, 277 U.S. 239, 242, 244, 48 S.Ct. 472, 473, 474, 72 L.Ed. 866 (1928):

> A tax imposed on corporations alone does not extend to a trustee in bankruptcy of a corporation.

> \*   \*   \*   \*   \*   \*

> The extension of a tax by implication is not favored.

The Court of Appeal for the Fifth Circuit has emphasized this fundamental maxim. Masonite Corp. v. Fly, 194 F.2d 257, 260–261 (5th Cir. 1952).

It is true, as pointed out by *Murtagh* in the article cited, that the maxim forbidding extension of a tax by implication comes into play only when the true meaning of the statutory provision is not evident by its language and context in the Internal Revenue Code. However, the present case is prescisely such an instance. We have a well-established previous body of tax law holding a non-operating trustee not liable for federal income tax. We have the curious and self-contradictory language of § 6012 (b) (3) purporting to have the trustee file the tax return for the corporate entity which he does not own or control; and the omission of the former provision in § 52(a) stating that the tax referred to (from operating the business, under that section) shall be collected from the trustee. While the provisions of § 6151 (a) of the 1954 Code indirectly impose the tax on the person required to make the return, the legislative history of § 6012(b) (3) as we have seen gave Congress no notice that this coupling of these two new sections was intended to dramatically change the substantive law relating to taxation of trustees in bankruptcy.

That the purported change would be dramatic is evident from a few examples. The present case involves interest on deposit of estate funds. As we have seen, taxation of such interest— which would further reduce the usually miniscule dividends to general creditors in straight bankruptcy proceedings—was never approved prior to 1954. In effect, the creditors would now be asked to pay a tax on their loss—and in this instance a tax on "income" earned by deposit of estate funds at interest to simply compensate for the necessary judicial delay in completion of the bankruptcy proceedings. An even more dramatic change would occur, under the same broad interpretation of § 6012(b) (3), in cases of sale of tangible assets by a liquidating trustee where a capital gain would occur because of a low basis stemming from the time when the bankrupt acquired the property. The *Sampsell* case held that the original tax basis was applicable, and upheld a capital gain tax upon the trustee's final bulk sale. As is pointed out in the *Krause and Kapiloff* article cited above, this is highly inequitable, inasmuch as the creditors would have incurred no such tax burden if the bankrupt had simply transferred the assets directly to them. A creditor who has supplied goods and is not paid in full for them has suffered a capital loss. Thus, the broad interpretation of § 6012(b) (3), approving possible capital gains taxes upon liquidation sales by trustees in bankruptcy, could lead to the spectacle of the general creditors of the bankrupt indirectly paying a capital gains tax upon their capital loss! Such would obviously be a dramatic change from prior law and clearly was not contemplated or intended by the simple change made by § 6012(b) (3) in the 1954 Revenue Code.

Considering all of the foregoing analysis, a firm conviction develops that whatever else Congress may have intended by the enactment of § 6012(b)

(3) it did *not* intend to overrule and change the well-established substantive principle of both statutory and case law to the effect that a non-operating trustee in bankruptcy is not subject to federal income taxes. The Court concludes accordingly that the statutory words must be construed narrowly in a procedural sense to avoid an unintended change in the substantive law. However, although this conclusion and construction avoids the necessity for facing the question of a direct conflict between the provisions and purposes of the Internal Revenue Code and the Bankruptcy Act, it should be noted that the courts—and particularly the Supreme Court—have not been adverse to ruling that conflicting provisions of the tax laws must on occasion bow to the strong social and economic policies underlying the Bankruptcy Act. See, e. g. United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971); New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949); Reinecke v. Gardner, 277 U.S. 239, 48 S.Ct. 472, 72 L.Ed. 866 (1928); In re Johnson Electric Corp., 312 F.Supp. 840 (S.D.N.Y.1970).

It is the opinion of the Court that the purposes and policies underlying both the Internal Revenue Code and the Bankruptcy Act can best be harmonized by a construction of § 6012(b) (3) of the Code to the following effect:

*A.* A trustee in bankruptcy operating and conducting the business of a corporate bankrupt, under authorization pursuant to § 2(a) (5) of the Bankruptcy Act, is required to file an income tax return pursuant to § 6012(b) (3) of the Code. Operating income reported on such return is subject to taxation under the Code provisions relating to corporate taxpayers, although the tax is imposed upon the trustee in his administrative capacity in conducting a business under authority of a United States court. This is in accord with the express language of 28 U.S.C. § 960 and with the settled judicial construction of the "return of income for such corporation" language which appears in both § 6012(b) (3) and its predecessor statutes.

*B.* A trustee in bankruptcy who is *not* operating and conducting the business of a corporate bankrupt is also required to file an income tax return pursuant to § 6012(b) (3) of the Code, but such return need only list his receipts with notation for informational purposes that they arose from non-operating activity and therefore do not comprise taxable income.

*C.* Neither operating nor non-operating trustees of corporate bankrupts are required to file the income tax returns for the bankrupt corporation itself, but the principals of the corporation may be compelled to prepare and file such returns pursuant to an appropriate order entered by the Bankruptcy Court under the general authority provided by § 2(a) (15) and § 7(b) of the Bankruptcy Act.

It is believed that the foregoing construction does no violence to the basic purposes of both the Revenue Code and the Bankruptcy Act. As befits a true compromise, it will not bring overwhelming ecstasy to either the tax administrators or the bankruptcy trustees. However, this construction does read the inartistic language of § 6012(b) (3), purporting to have the trustee filing income tax returns for a legal entity he does not own or control, in a way which is in accord with the obvious purpose to treat the trustee as the taxpayer subject to federal income taxation. Such interpretation of illogical or self-contradictory statutory language, to avoid absurd or unreasonable results, has the sanction of an eloquent statement of a court's duty in this regard by the United States Supreme Court in United States. v. American Trucking Associations, Inc., 310 U.S. 534, 543–544, 60 S.Ct. 1059, 1063–1064, 84 L.Ed. 1345 (1940):

> There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves

to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. Emphasis should be laid, too, upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, "excepting as a different purpose is plainly shown."

In the present case, the construction of § 6012(b) (3) has been attempted in light of this standard.

As for practical consequences of the foregoing construction, it should be noted that the returns filed by a non-operating trustee will give the Internal Revenue Service notice of the trustee's activity and contentions in this regard, as he proceeds with his administration of the bankruptcy estate. It will give the government a chance to challenge this contention, when appropriate, to secure a determination as to whether the trustee is or is not operating the business in question. Moreover, where the trustee admittedly is an operating trustee, the foregoing construction will permit the maximum utilization of the ordinary income tax procedures by the filing of operating tax returns with the IRS by the trustee during the course of the bankruptcy proceeding. Finally, the necessary flexibility to permit the expeditious closing of bankruptcy proceedings can be preserved by the exercise of the Bankruptcy Court's authority to pass finally on administrative claims, as set forth in the first section of this Opinion. When the estate is ready for final distribution, the trustee can apply for determination, payment, and discharge of all unpaid administrative liabilities as part of his Preliminary Final Report to the Court. After reasonable notice to all parties, including the government, and the granting of any necessary continuances to permit further audit by IRS officials when warranted, the Bankruptcy Court can resolve any remaining issues as to the trustee's administrative liabilities so that the trustee may comply with his statutory duty under § 47(a) (1) of the Bankruptcy Act to "close up the estates as expeditiously as is compatible with the best interests of the parties in interest".

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure. A separate Order in conformity herewith shall be entered.

S/  James E. Yacos
_____
Referee in Bankruptcy